697 S.E.2d 59

**John Brian HARRISON, Petitioner Below, Appellee**

**v.**

**COMMISSIONER, DIVISION OF MOTOR VEHICLES, Respondent Below, Appellant**

**Kenneth E. Reese, Jr., Petitioner Below, Appellee**

**v.**

**Commissioner, Division Of Motor Vehicles, Respondent Below, Appellant.**

**Nos. 34970, 34971.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 10, 2010.

Decided June 3, 2010.

Janet E. James, Attorney General's Office, Charleston, WV, for Appellant.

Neal J. Hamilton, Fairmont, WV, for Appellee, John Brian Harrison.

David W. Frame, Clarksburg, WV, for Appellee, Kenneth E. Reese, Jr.

MCHUGH, Justice:

In these consolidated cases, Joe E. Miller, Commissioner of the West Virginia Division of Motor Vehicles[1] (hereinafter "Commissioner" or "DMV"), Department of Transportation, appeals two circuit court orders, each of which modified the terms of a driver's license revocation order for driving under the influence of alcohol (hereinafter "DUI"). More precisely, DMV is appealing the March 30, 2009, order of the Circuit Court of Marion County in Case No. 34970 involving John Brian Harrison, and the November 21, 2008, order of the Circuit Court of Harrison County in Case No. 34971 involving Kenneth E. Reese, Jr.[2] According to the orders, both circuit court judges concluded that DMV could not enhance the revocation periods imposed for a second incidence of DUI with an earlier occurrence of DUI which took place before the cases of *State ex rel. Stump v. Johnson,* 217 W.Va. 733, 619 S.E.2d 246 (2005) and *State ex rel. Baker v. Bolyard,* 221 W.Va. 713, 656 S.E.2d 464 (2007), were decided. The lower courts reasoned that it would be inequitable and a violation of due process to allow DMV to use the earlier offenses as predicates for enhancement of the license revocation periods when the agency did not follow the statutory procedure in that it actually did not revoke drivers' licenses based on nolo contendere pleas in DUI cases prior to the decisions in *Stump* and *Baker.* Having carefully considered the arguments, records and relevant law, we reverse the orders of the lower courts.

## I. Factual and Procedural Background

### A. Case No. 34970—Mr. Harrison

Mr. Harrison was arrested for DUI on August 7, 2003. An order was issued by

1. Joe E. Miller succeeded Joseph Cicchirillo as the current Commissioner of DMV.

2. Mr. Harrison and Mr. Reese will be herein jointly referred to as "Appellees."

DMV revoking Mr. Harrison's license, which Mr. Harrison contested. Before the DMV revocation hearing was held, Mr. Harrison entered a plea of no contest to the criminal charge of DUI in municipal court on October 16, 2003. There is no dispute that an abstract of the "no contest" judgment was submitted to DMV as required under the provisions of West Virginia Code § 17C–5A–1a(b).[3] Irrespective of the outcome of the criminal case, DMV issued a final order on January 13, 2004, dismissing the revocation because the arresting officer failed to appear at the administrative hearing.

On August 8, 2008, Mr. Harrison was arrested and charged with DUI, second offense. Mr. Harrison received a DMV order of revocation dated August 26, 2008, by which Mr. Harrison was notified that pursuant to West Virginia Code § 17C–5A–1(c) his driving privileges were being revoked effective September 30, 2008, for driving under the influence. The order reflected that the revocation period was enhanced due to the previous DUI conviction on October 16, 2003, causing Mr. Harrison's privilege to operate a vehicle to be revoked for one year and with reinstatement contingent upon successful completion of both the Mandatory Alcohol Test and Lock Program [4] and the Safety and Treatment Program,[5] as well as payment of requisite fees. Mr. Harrison contested the revocation, and apparently an administrative hearing before a DMV hearing examiner was scheduled.[6] In the interim, Mr. Harrison pled guilty to the criminal charge of first offense DUI, which plea was accepted by a magistrate on February 13, 2009. Upon receipt of the abstract of judgment from the magistrate court in the criminal case, DMV issued an Order of Revocation on March 6, 2009, cancelling the scheduled administrative hearing and informing Mr. Harrison that the conviction in the criminal case was sufficient grounds to uphold its previous order of revocation. *See* W.Va.Code § 17C–5A–1a(c). Additionally, the order further indicated that the revocation period would commence on April 10, 2009, for the enhanced period of one year with the same conditions of reinstatement as related in the initial revocation order dated August 26, 2008.

In his challenge to the revocation in the circuit court, Mr. Harrison conceded that revocation of his license was appropriate for the more recent DUI conviction of February 13, 2009, but argued that the terms of the revocation should be limited to the restrictions applicable to a first offense and not the statutory enhancements applicable to a second offense. Mr. Harrison specifically contended that enhancement of the revocation was not appropriate because his license was not actually revoked for the earlier DUI conviction of October 16, 2003, because it occurred at a time when DMV did not consider pleas of nolo contendere to DUI to be convictions and did not revoke drivers' licenses on the basis of no contest pleas. He further noted that the municipal court and DMV documents regarding the 2003 offense did not explicitly state that the 2003 case resulted in a conviction. Additionally, Mr. Harrison contended that it would be a violation of due process to retroactively apply the interpretation of the term "conviction" under West Virginia Code § 17C–5A–1a(e) to include pleas of nolo contendere as determined in the *Stump* and *Baker* cases.

3. West Virginia Code § 17C–5A–1a refers to the court's submission of a "transcript of the judgment of conviction" of DUI cases to DMV. Since the courts disposing of these cases generally are not courts of record, abstracts of judgments are submitted by the court clerks to satisfy this statutory notification requirement.

4. W.Va.Code § 17C–5A–3a.

5. W.Va.Code § 17C–5A–3.

6. Shortly after requesting an administrative hearing, Mr. Harrison also sought judicial review of the initial revocation order in the circuit court. The circuit court entered an order on November 18, 2008, by which the action before the court was held in abeyance until DMV issued a final order. After the March 6, 2009, DMV final order issued, DMV moved for the dismissal of the judicial review proceeding on the basis that the appeal was rendered moot by the statutorily mandated obligation of the agency to revoke the license upon conviction. At the same time Mr. Harrison filed a motion to reinstate the petition for judicial review to active status. The lower court reinstated the petition to active status by order dated March 11, 2009; DMV's motion to dismiss was denied as part of the final order of March 30, 2009, which is now before this Court.

In its March 30, 2009, order, the circuit court modified the license revocation. The order contains the following conclusions of law[7]:

> 5. Since the D.M.V. did not observe the procedure set out in West Virginia Code § 17C–5A–1a to revoke the petitioner's license and establish a "conviction" after his 2003 no contest plea, it violates Due Process for the D.M.V. to treat the petitioner's 2003 no contest plea, as a "conviction" or "revocation" retroactively.
>
> * * * * * *
>
> 11. The *Stump* and *Baker* opinions do not address the retroactivity of the doctrine they adopted, and, although they did not explicitly overrule prior case law, it would be inequitable to apply the new principle of law adopted in those opinions retroactively to individuals who entered pleas of no contest in criminal cases in reliance upon the prevailing interpretation of that time, later to learn that he is subject to enhanced penalties for subsequent offenses based on a change in the law. *See Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 347, 256 S.E.2d 879, 887 (1979) (discussed and applied recently in *Caperton v. a.t. [sic] Massey Coal Company, Inc.* [223 W.Va. 624], 679 S.E.2d 223 [ (2008) ] [8] ).
>
> 12. The petitioner's 2003 plea of no contest is not a valid predicate offense for the purpose of enhancing the revocation for his 2008 offense because the D.M.V. failed to follow the procedure prescribed by law to establish a "conviction" or "revocation" with respect to his 2003 plea, and it is inequitable to apply the new principle of law adopted in *Stump* and *Baker* retroactively.

The order thereafter directs DMV to modify the revocation to reflect the period of time applicable to a first offense.

DMV filed its petition for appeal of this order, and review was granted by this Court on June 3, 2009.

### B. Case No. 34971—Mr. Reese

On May 23, 2002, Mr. Reese was arrested and charged with first offense DUI. DMV sent Mr. Reese a notice of license revocation and Mr. Reese requested an administrative hearing. In the meantime, the adjudication of the criminal charge proceeded in magistrate court where Mr. Reese's plea of nolo contendere was accepted on May 28, 2002. The record reflects that on or about October 14, 2002, an abstract of the judgment in the criminal case was sent to DMV as required by West Virginia Code § 17C–5A–1a. DMV held its administrative hearing regarding the revocation on October 29, 2002. The final order issued as a result of the hearing, dated December 3, 2002, reflects that because the arresting officer failed to appear at the hearing, "[t]he Order of Revocation heretofore entered against the Respondent's privilege to drive a motor vehicle in this state is hereby reversed, and this case is dismissed."

Six years later, Mr. Reese was arrested on May 31, 2008, and charged with DUI, second offense. Based on the written statement of the arresting officer pursuant to West Virginia Code § 17C–5A–1, DMV issued an order of revocation dated June 24, 2008. The order revealed the revocation period was enhanced by DMV due to the previous DUI offense in 2002. Mr. Reese filed a timely request for an administrative hearing, which was scheduled for August 15, 2008. The criminal prosecution of the DUI charge took place in magistrate court where Mr. Reese entered a no contest plea to first offense DUI on July 23, 2008, as part of a plea agreement. Upon receiving the magistrate court's abstract of the judgment entered in the 2008 DUI case, DMV issued an order of revocation on August 8, 2008. In this order, DMV advised Mr. Reese that the administrative hearing was canceled due to receipt of the notice of his July 23, 2008, DUI conviction in magistrate court, and that his license was revoked for an enhanced time period because of his prior DUI conviction.

7. Aside from the date of the first offense, the same conclusions appeared in the November 21, 2008, order of the Harrison County Circuit Court in Mr. Reese's case.

8. Opinion reversed and superseded by *Caperton v. A.T. Massey Coal Co.,* 225 W.Va. 128, 690 S.E.2d 322 (2009).

Mr. Reese sought judicial review of the administrative order in the circuit court where he conceded that revocation of his license for the 2008 DUI offense was appropriate. However, he argued that the administrative revocation should be limited to the license restrictions applicable to a first offense without any enhancement. He maintained that in 2002 DMV did not consider a no contest plea to be a conviction for administrative revocation purposes and did not actually revoke licenses on that basis until the cases of *Stump* and *Baker* were decided by this Court. Mr. Reese proposed that under these circumstances it would be unfair and a violation of due process to apply the judicial interpretation retroactively.

In its November 21, 2008, order the circuit court found that Mr. Reese's 2002 plea of nolo contendere in magistrate court on May 28, 2002, was not a valid predicate offense for the purpose of enhancing the driver's license revocation for his 2008 offense based upon the same conclusions as that found the following year by the court reviewing Mr. Harrison's case. The essence of the lower court's order is that it would be inequitable and a violation of due process to apply the "new principle of law" adopted in *Stump* and *Baker* retroactively because DMV failed to follow the procedure prescribed by law to revoke Mr. Reese's license when it received notice from the magistrate court that on May 28, 2002, Mr. Reese entered a plea of no contest to that DUI charge.

On June 3, 2009, this Court granted DMV's petition for appeal in this case and consolidated it with Case No. 34970 for review.

## II. Standard of Review

Our review of an appeal from a circuit court's decision involving an administrative agency order is governed by the standard set forth in syllabus point one of *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996), wherein we held:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Our review proceeds accordingly.

## III. Discussion

The focus of this appeal is whether a driver's license revocation period can be enhanced by an earlier DUI incident that occurred during the time when DMV did not revoke driver's licenses upon court notification that the license holder entered a plea of nolo contendere in the related criminal DUI case. That is, prior to the time that this Court found that statutory administrative procedure provides that DMV shall revoke licenses when convictions occur, including those resulting from pleas of nolo contendere. In syllabus point two of *State ex rel. Stump v. Johnson,* 217 W.Va. 733, 619 S.E.2d 246 (2005), this Court held that

> [i]n giving effect to the plain language contained within W.Va.Code § 17C-5A-1a(e), a person pleading guilty or found guilty by a court or jury of driving under the influence of alcohol, controlled substances, or drugs, shall be considered "convicted," and the [DMV] Commissioner has a mandatory duty to revoke the person's license to operate a motor vehicle in the State of West Virginia as provided by W.Va.Code § 17C-5A-1a(a).

We applied this holding to the facts before us in *Stump* and concluded that the defendant triggered the mandatory license revocation provisions of West Virginia Code § 17C-5A-1a(a) because he was found guilty based on a plea of nolo contendere. Any misapprehension there may have been after *Stump* regarding the effect a nolo contendere plea to DUI has in license revocation cases was quelled two years later in *State ex rel. Baker v. Bolyard,* 221 W.Va. 713, 656 S.E.2d 464 (2007), wherein this Court held:

> "Where a person enters a plea of *nolo contendere* to an offense defined in W.Va. Code § 17C-5-2 (2007), the mandatory license revocation or suspension provisions of W.Va.Code § 17C-5A-1a(a) (2004) are triggered because that person has been found guilty by a court, by virtue of a *nolo contendere* plea to criminal charges, and is

thus deemed convicted of the offense pursuant to the provisions of W.Va.Code § 17C–5A–1a(e) (2004)."

*Id.* at Syl. Pt. 2.

In addition to the mandatory duty established in West Virginia Code § 17C–5A–1a(a), DMV maintains that the agency also has a non-discretionary duty under the express terms of West Virginia Code § 17C–5A–3a to use all DUI convictions for enhancement purposes when a subsequent license revocation for DUI occurs within ten years of the first conviction, ***regardless of whether there had been an actual revocation of the license for the earlier conviction.*** Appellees, however, maintain that the lower courts were correct in finding that it would be a due process violation to permit DMV to treat their prior DUI offenses as valid predicates for enhancement of subsequent revocations because at the time of their first DUI offenses, the provisions of West Virginia Code § 17C–5A–3a were not mandatory. Furthermore, the revocation process DMV followed under these circumstances was governed by the provisions of West Virginia Code §§ 17C–5A–1a and 17C–5A–2. As a result, when they pled no contest to the first DUI offenses, instead of revoking their licenses upon receiving the abstracts of the convictions from the court clerks, DMV issued orders dismissing the revocation proceedings because the arresting officers failed to appear at their respective hearings. Appellees argue that since these earlier offenses did not result in an *actual* revocation under the terms of the procedures followed and relied upon by DMV at that time, the offenses cannot now be used as predicates for enhancing revocation periods. If DMV were allowed to go back and correct what was found in *Stump* and *Baker* to be a mandatory duty to revoke their licenses by treating their initial convictions as predicate offenses for enhancement purposes in order to satisfy the requirements of a later-enacted statute (W.Va.Code § 17C–5A–3a), Appellees maintain they would be denied due process protection of their recognized valuable property interest in having a driver's license. Similar arguments were made by the parties in the circuit courts.

As earlier noted, the final orders of the lower courts reflect virtually the same reasoning to conclude that modification of the revocation period was warranted. In sum, in those orders the lower courts found that it is inequitable and a violation of due process to apply retroactively the "new principle of law" adopted in *Stump* and *Baker* when DMV failed to follow the procedure prescribed by law to revoke Appellees' licenses at the time the agency received notice from the courts in which the pleas of no contest in the 2002 and 2003 DUI cases had been tendered. Based upon the provisions of the orders and the arguments of the parties we will structure our discussion to first address the matters raised in relation to the retroactive application of a decision of this Court and then consider the arguments regarding due process.

**A. Retroactivity**

Both lower courts concluded that it would be inequitable to apply "the new principle of law adopted in ... [the *Stump* and *Baker*] opinions retroactively." DMV contends that it was not retroactively or inequitably applying a new point of law in Appellees' 2008 cases. Rather, it was carrying out a non-discretionary statutory duty which was simply articulated in the *Stump* and *Baker* decisions. We find merit in DMV's position.

In *Stump,* we examined the meaning of the term "conviction" in the context of West Virginia Code § 17C–5A–1a(e) regarding DMV's administrative procedures for revoking driver's licenses. In addition to finding in *Stump* that the driver's nolo contendere plea to DUI constituted a conviction pursuant to the plain language of the statute, we held that the statute imposed a mandatory duty on DMV to revoke a driver's license whenever a DUI conviction occurs. *Id.* 217 W.Va. at 734, 619 S.E.2d at 247. Hence, our pronouncement in *Stump* is a statement of what West Virginia Code § 17C–5A–1a(e) has meant since it was first enacted. As aptly expressed by the United States Supreme Court in *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994),

It is this Court's responsibility to say what a statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law. *A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.*

*Id.* at 312–313, 114 S.Ct. 1510 (emphasis added). It was further explained in *Rivers* that "when this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." *Id.* at 313, 114 S.Ct. 1510, n. 12. As the highest judicial authority in this State, the same holds true for this Court's pronouncements regarding state statutes. Thus Appellees have been on notice since 2005 when *Stump* was decided that pleas of no contest to DUI are convictions for revocation purposes under West Virginia law. *See Shumate v. West Virginia Dept. Of Motor Vehicles,* 182 W.Va. 810, 813, 392 S.E.2d 701, 704 (1990) (citing *State v. Scheffel,* 82 Wash.2d 872, 514 P.2d 1052 (1973)) ("*It was the final violation which brought ... [the defendants] within the ambit of the act....* A statute is not retroactive merely because it relates to prior facts or transactions where it does not change their legal effect." (Emphasis in original.)).

In the present case, DMV was merely carrying out its duty under the plain language of West Virginia Code § 17C–5A–1a(e) when it searched its records for prior convictions upon being notified of the 2008 DUI convictions. Consequently, neither the test in syllabus point five of *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979), for determining retroactivity of a *new principle* of law that overrules prior precedent, nor the test for determining retroactivity of the announcement of a *new principle* of law that does not overrule prior precedent announced in syllabus point nine of *Caperton v. A.T. Massey Coal, Co., Inc.,* 225 W.Va. 128, 690 S.E.2d 322 (2009), has any application here.

Within their retroactivity arguments, Appellees mention that after *Stump* was decided an amendment was made to the Code of State Rules. They characterize this amendment as a legislative attempt to reverse the effect the *Stump* decision had on DMV's treatment of nolo contendere pleas as convictions. The rule, which took effect in May 2006, states: "For the purposes of this rule, a plea of nolo contendere stands as neither an admission of guilt nor a conviction for administrative revocation proceedings." C.W.Va.R. 91, § 5–14.1. This rule certainly has topical interest, but we find it has no legal bearing on the matters before us.

Despite the fact that this Court gives substantial deference to valid legislative rules, that deference has bounds. *See* Syl. Pt. 3, in part, *Appalachian Power Co. v. State Tax Dept. of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995) (when considering a legislative rule when the Legislature has directly spoken to the question at issue, an "agency's position only can be upheld if it conforms to the Legislature's intent."). Although legislative rules complete the legislative process of review and enactment, the underlying subject of the enabling statute of each rule is not studied and deliberated by the legislative bodies through the rulemaking review process. W.Va.Code §§ 28A–3–1 through 18. The focus of the rulemaking process is the implementation of the controlling or substantive law previously enacted by the Legislature. Accordingly, a rule must always submit to the legislative intent expressed in the controlling or substantive statute which the rule is promulgated to implement.

The United States Supreme Court further observed in *Rivers* that once the legislative intent behind a statute has been identified through court interpretation, any desire by the legislative branch to change that interpretation must be evidenced by amendment to the substantive statute clearly stating a different intent.

[The legislative branch,] of course, has the power to amend a statute that it believes we have misconstrued. It may even, within broad constitutional bounds, make such a change retroactive and thereby undo what it perceives to be the undesirable past consequences of a misinterpretation of

its work product. No such change, however, has the force of law unless it is implemented through legislation. Even when ... [the legislative branch] intends to supersede a rule of law embodied in one of our decisions with what it views as a better rule established in earlier decisions, its intent to reach conduct preceding the "corrective" amendment must clearly appear.

511 U.S. at 313, 114 S.Ct. 1510. Accordingly, we hold that when this Court interprets a statute and determines legislative intent either in the plain language of the statute or by application of rules of statutory construction, any change in that interpretation by the Legislature may only be accomplished through clear indication of a different intent through amendment and reenactment of the substantive statute which was previously interpreted. The enactment of a legislative rule is not a clear indication of a different intent by the Legislature. The substantive statutory provision construed in *Stump*, West Virginia Code § 17C–5A–1a(e), has not been amended since *Stump* was decided.

**B. Due Process**

This leads us to the ultimate question inherent in the circuit courts' determinations: whether imposition of the mandatory duty embodied in West Virginia Code § 17C–5A–3a violates due process or is inequitable as applied to Appellees' circumstances.

As a backdrop to this discussion we note that the administrative procedures by which DMV may revoke a driver's license for driving under the influence of alcohol, controlled substances or drugs are codified in Article 5A, Chapter 17C of the West Virginia Code. We have examined the procedures applied to Appellees' situations which involve the interplay of the statutory provisions in West Virginia Code §§ 17C–5A–1 (revocation based upon examination written law enforcement reports), 17C–5A–1a (revocation based upon DUI convictions), 17C–5A–2 (administrative hearing and periods of revocation), and 17C–5A–3a (test and lock program and periods of revocation). We fully appreciate that the statutes are far from a model of clarity, which only underscores the need for our scope of discussion here to be defined by the key issue of ***convictions*** used for enhancement of revocation periods.

The lower courts both found that it would violate due process or would be inequitable to allow DMV to use a prior conviction for enhancement purposes when at the time the conviction occurred DMV did not follow the procedural steps set forth in § 17C–5A–1a so as to "establish a 'conviction' for purposes of enhancement of the penalty for subsequent offenses." The lower courts also concluded as set forth in their orders that:

> Although West Virginia Code § 17C–5A–3a modified the law by adding prior "conviction[s]" as well as a prior "suspension[s]" or "revocation[s]," as a basis for enhanced penalties for subsequent offenses, West Virginia Code § 17C–5A–3a does not define "conviction," nor does any other section of chapter 17C, article 5A define it, beyond the provisions of West Virginia Code § 17C–5A–2, which only treat a "conviction" that results in a "suspension" or "revocation" as a valid predicate offense for enhancement of subsequent revocations. See, West Virginia Code § 17C–5A–2(n) [9].

This reasoning is inherently flawed in that DMV is not charged with the responsibility for *establishing* convictions, which is purely a court function. A conviction occurs within the confines of the criminal jurisdiction of the courts, and we have clearly stated that administrative license revocation proceedings for DUI are proceedings separate and distinct from criminal proceedings. Syl. Pt. 3, *Carroll v. Stump*, 217 W.Va. 748, 619 S.E.2d 261 (2005). Further, although the orders refer to the enhancement of the revocation period as a "penalty," the penalties for DUI are imposed under the criminal, *not* administrative, DUI statutes. *Shell v. Bechtold*, 175 W.Va. 792, 796, 338 S.E.2d 393, 396 (1985) (recognizing distinction between the judicial imposition of criminal penalties and the administrative revocation or suspension of a

9. West Virginia Code § 17C–5A–2 was rewritten in 2008, which resulted in subsection (n) being relocated to its current position at subsection (p). Aside from relocation, no substantive change was made to the subsection.

driver's license). The agency's duty pursuant to West Virginia Code § 17C–5A–1a is to act upon notification from a criminal court that a conviction of DUI occurred. Contrary to the lower courts' observation, the meaning of conviction for enhancement purposes is an inherent part of the direction in West Virginia Code § 17C–5A–1a(b) that an abstract of judgment be sent to DMV by "[t]he clerk of the court in which a person is convicted for an offense described in section two [§ 17C–5–2], article five of this chapter . . .". DMV's duty to revoke is automatic upon receipt of the court's notice and does not require the agency to make any independent determination regarding the conviction. W. Va.Code § 17C–5A–1(c). Obviously, one's license may be revoked without a conviction. The reference in the orders to the provision in West Virginia Code § 17C–5A–2 (n), which is currently found in subsection (p),[10] regarding use of convictions for revocation purposes is limited by its terms as applicable only to section two of Article 5A, which deals with matters involving DMV hearings and revocations resulting therefrom. Consequently, the provisions of West Virginia Code § 17C–5A–2 are not relevant to our discussion.

What is relevant to the matter before us is how the use of convictions for enhancement purposes is treated under West Virginia Code § 17C–5A–3a (2008)[11]. The following are the pertinent provisions of the statute:

> (a)(1) The Division of Motor Vehicles shall control and regulate a Motor Vehicle Alcohol Test and Lock Program for persons whose licenses have been revoked pursuant to this article or the provisions of article five [§ 17C–5–1 et seq.] of this chapter or have been convicted under section two [§ 17C–5–2], article five of this chapter.
>
> *　*　*　*　*　*
>
> (d) ***Notwithstanding any provision of the code to the contrary,*** *a person* ***shall participate*** in the program *if* the person is *convicted* under section two [§ 17C–5–2], article five of this chapter *or* the *person's license is revoked* under section two [§ 17C–5A–2] of this article or section seven [§ 17C–5–7], article five of this chapter ***and the person was previously either convicted or his or her license was revoked*** under any provision cited in this subsection within the past ten years. The minimum revocation period for a person required to participate in the program under this subsection is one year and the minimum period for the use of the ignition interlock device is two years, except that the minimum revocation period for a person required to participate because of a violation of subsection (n), section two of this article or subsection (i), section two, article five of this chapter is two months and the minimum period of participation is one year. The division shall add an additional two months to the minimum period for the use of the ignition interlock device if the offense was committed while a minor was in the vehicle. The division shall add

10. West Virginia Code § 17C–5A–2(p) reads as follows (emphasis added):

> (p) *For purposes of this section,* where reference is made to previous suspensions or revocations *under this section,* the following types of criminal convictions or administrative suspensions or revocations shall also be regarded as suspensions or revocations under this section or section one [§ 17C–5A–1] of this article:
>
> (1) Any administrative revocation under the provisions of the prior enactment of this section for conduct which occurred within the ten years immediately preceding the date of arrest;
>
> (2) Any suspension or revocation on the basis of a conviction under a municipal ordinance of another state or a statute of the United States or of any other state of an offense which has the same elements as an offense described in section two [§ 17C–5–2], article five of this chapter for conduct which occurred within the ten years immediately preceding the date of arrest; or
>
> (3) Any revocation under the provisions of section seven [§ 17C–5–7], article five of this chapter for conduct which occurred within the ten years immediately preceding the date of arrest.

11. The quoted provisions of West Virginia Code § 17C–5A–3a were first inserted in the Motor Vehicle Test and Lock Statute in 2005. The statute was thereafter amended in 2007, 2008 and 2010. The 2007 amendments were in effect at the time of Mr. Reese's 2008 arrest; the 2008 amendments had taken effect at the time of Mr. Harrison's arrest in 2008. The provisions of the statute relevant to the matters on appeal have remained unchanged since 2005, and the language of the 2008 version of the statute appearing herein is applicable to both cases.

an additional six months to the minimum period for the use of the ignition interlock device if a person other than the driver received injuries. The division shall add an additional two years to the minimum period for the use of the ignition interlock device if a person other than the driver is injured and the injuries result in that person's death. The division shall add one year to the minimum period for the use of the ignition interlock device for each additional previous conviction or revocation within the past ten years. Any person required to participate under this subsection must have an ignition interlock device installed on every vehicle he or she owns or operates.

The mandatory intent of the Legislature is clearly stated in the first sentence of subsection (d), which provides ***"[n]otwithstanding any provision of the code to the contrary,*** a *person* ***shall participate*** in the program *if* the person is *convicted* under section two [§ 17C–5–2], article five of this chapter *or* the *person's license is revoked* under section two [§ 17C–5A–2] of this article or section seven [§ 17C–5–7], article five of this chapter ***and the person was previously either convicted or his or her license was revoked*** under any provision cited in this subsection within the past ten years." As the Code provision neither limits nor qualifies the circumstances to which the non-discretionary duty applies, DMV properly followed the mandate of the statute by treating Appellees' prior convictions as predicate offenses for enhancement purposes. This leads to the Appellees' final contention that the statute as applied to their circumstances violates due process.

This Court has recognized that a driver's license is a property interest which is afforded protection under the due process clause of the state constitution.[12] Syl. Pt. 1, *Abshire v. Cline,* 193 W.Va. 180, 455 S.E.2d 549 (1995); *see also Jordan v. Roberts,* 161 W.Va. 750, 753, 246 S.E.2d 259, 261 (1978) ("[W]e characterize a driver's license as a property interest and require the protection of our Due Process Clause before its suspension."). Nonetheless, we fail to see how Appellees were deprived of due process in the administrative license revocation proceedings. Neither Appellee claims that the earlier conviction did not occur. Their arguments focus on how the prior convictions affect the periods of revocation. Appellees maintain, without citing to any authority for support of their position, that because DMV did not revoke their licenses upon court notice of the criminal convictions in 2002 and 2003 as the agency was required to do pursuant to West Virginia Code § 17C–5A–1a, that those convictions cannot now be used for enhancement of a revocation period. The agency's action or inaction upon notification of the criminal conviction for DUI in no way alters the fact that a conviction indeed occurred. Nor does the agency's inaction at an earlier date alter the mandatory duty the agency now has under the provisions of West Virginia Code § 17C–5A–3a to use the conviction for enhancement purposes. Appellees' due process rights with regard to their convictions were accorded through the criminal adjudication process. And as this Court has previously expressed, the

> [a]dministrative license revocation proceedings for driving a motor vehicle under the influence of alcohol, controlled substances or drugs which are initiated pursuant to Chapter 17C of the West Virginia Code are proceedings separate and distinct from criminal proceedings arising from driving a motor vehicle under the influence of alcohol, controlled substances or drugs.

Syl. Pt. 3, in part, *Carroll v. Stump.* We also noted in *Mullen v. Division of Motor Vehicles,* 216 W.Va. 731, 613 S.E.2d 98 (2005), that "[i]f the Legislature had wanted to so intertwine the criminal and civil aspects of DUI law as to automatically void related administrative driver's license suspensions when DUI criminal charges are dropped or unproven, the Legislature could have clearly done so—but it did not." *Id.* at 734, 613 S.E.2d at 101. Likewise, the Legislature could have provided exceptions to what criminal convictions could be used to enhance

12. The due process clause is in Article III, § 10 of the *West Virginia Constitution* and states: "No person shall be deprived of life, liberty, or property, without due process of law...."

driver's license revocation periods—but it did not elect to do so.

Finding no merit in the arguments regarding retroactivity and deprivation of due process, we reverse the trial court orders.

## IV. Conclusion

Based upon the foregoing, the March 30, 2009, order of the Circuit Court of Marion County in Case No. 34970 involving John Brian Harrison, and the November 21, 2008, order of the Circuit Court of Harrison County in Case No. 34971 involving Kenneth E. Reese, Jr. are reversed.

Reversed.