697 S.E.2d 730

**STATE of West Virginia ex rel. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner**

**v.**

**Honorable Thomas A. BEDELL, Judge of Circuit Court of Harrison County, Respondent.**

**No. 35514.**

Supreme Court of Appeals of West Virginia.

Submitted April 21, 2010.

Decided June 16, 2010.

E. Kay Fuller, Esq., Michael M. Stevens, Esq., Martin & Seibert, LC, Martinsburg, WV, for Petitioner, State Farm Mutual Automobile Insurance Company.

Tiffany R. Durst, Esq., Pullin, Flower, Flanagan, Brown, & Poe, PLLC, Morgantown, WV, for Respondent, Lana Eddy Luby.

David J. Romano, Esq., J. Tyler Slavey, Esq., Romano Law Office, Clarksburg, WV, for Respondent, Carla Blank.

D.C. Offutt, Esq., Offutt, Nord, PLLC, Huntington, WV, for Amicus Curiae, West Virginia Mutual Insurance Company.

Mary Jane Pickens, Esq., Victor Allen Mullins, Esq., Offices of the West Virginia Insurance Commissioner, Charleston, WV, for Amicus Curiae, Jane L. Cline, West Virginia Insurance Commissioner.

Jill Cranston Bentz, Esq., Jacob A. Manning, Esq., Dinsmore & Shohl, LLP, Charleston, WV, for Amicus Curiae, West Virginia Insurance Federation.

James D. Lamp, Esq., Matthew J. Perry, Esq., Lamp, O'Dell, Bartram, Levy & Trautwein, PLLC, Huntington, WV, for Amicus Curiae, National Insurance Crime Bureau.

WORKMAN, Justice:

Petitioner State Farm Mutual Automobile Insurance Company ("State Farm") seeks a writ of prohibition to prevent the Circuit Court of Harrison County, West Virginia, from enforcing a protective order issued on

February 11, 2010. State Farm contends that complying with that protective order would cause it to violate a legislative rule promulgated by the Insurance Commissioner of West Virginia. Having fully considered the briefs submitted by the parties,[1] the record on appeal and the parties' oral arguments, the Court grants the writ of prohibition as requested.

## I.

### FACTS AND PROCEDURAL HISTORY

On March 20, 2008, near Buckhannon, West Virginia, a vehicle driven by Jeremy Thomas crossed the center lane into oncoming traffic and collided head-on with a vehicle driven by Lynn Blank. Mr. Thomas died in the accident and a post-mortem autopsy revealed the presence of marijuana in his system. Mr. Blank also died in the accident and Carla Blank, his wife and passenger, suffered serious injuries. Both vehicles were insured by State Farm. Mr. Thomas's vehicle was covered by a liability policy, while the Blanks' policy included underinsured motorist coverage.

On February 12, 2009, Mrs. Blank, in her individual capacity and as the Administrator of Mr. Blank's Estate, filed suit against Lana Luby, as Personal Representative of Mr. Thomas's Estate ("Mr. Thomas's Estate"), in the Circuit Court of Harrison County. Mrs. Blank sought damages for her physical injuries and for emotional distress and, as the personal representative of Mr. Blank's Estate, she sought damages for his death. In addition, Mrs. Blank sued State Farm for underinsured motorist coverage, both on behalf of herself and on behalf of Mr. Blank's Estate. She additionally asserted a first-party bad faith claim against State Farm, alleging that State Farm had failed to pay

underinsured motorist coverage pursuant to the terms of her insurance policy. The parties agreed to bifurcate the bad faith claim. Counsel for Mr. Thomas's Estate and counsel for State Farm decided to cooperate in their defense, with counsel for State Farm taking the lead.[2]

During discovery, the parties were unable to agree to the disclosure of the Blanks' medical records. State Farm had requested an authorization to obtain the records both informally and through formal discovery. Mrs. Blank, however, refused to sign an authorization, or otherwise disclose the records, unless State Farm agreed to a protective order regarding the confidentiality of the records. State Farm asserts that it was willing to sign a reasonable protective order, as it had in prior cases. It was unwilling, however, to sign the order sought by Mrs. Blank, which prohibited State Farm from electronically scanning the records and required it to destroy or return the records at the conclusion of the litigation. State Farm proffered an alternative protective order that, it alleges, complies with existing laws and regulations, but Mrs. Blank refused it.

After each party filed several motions relating to the discovery dispute, the circuit court entered an Order on February 11, 2010, entitled "Order Denying Plaintiff's Motion to Strike and Ordering Disclosure of Medical Records Subject to Terms of Confidentiality."[3] In that Order, the circuit court directed Mrs. Blank to disclose all relevant medical records, but conditioned their disclosure on special confidentiality terms. Specifically, the circuit court's Order provides, in relevant part:

> 1. Defendants' counsel will not disclose orally or in summary form, any of the Plaintiff's or Decedent's medical records, or medical information, to any person oth-

---

1. The Court acknowledges the contributions from the four amici curiae who filed briefs in this case, all supporting State Farm's petition for a writ of prohibition: the West Virginia Insurance Commissioner Jane L. Cline, the West Virginia Insurance Federation, the National Insurance Crime Bureau, and West Virginia Mutual Insurance Company.

2. State Farm retained counsel to represent Mr. Thomas's Estate, pursuant to State Farm's duty

to defend under Mr. Thomas's liability policy. State Farm hired separate counsel to defend it against the underinsured motorist coverage claims and the first-party bad faith claim.

3. The portion of the circuit court's February 11, 2010, Order pertaining to Mrs. Blank's Motion to Strike is not at issue in this petition for a writ of prohibition.

er than their clients, office staff, and experts necessary to assist in this case, and any such person shall be advised of this Protective Order and receive and review a copy of it and be informed that they are bound by the non-disclosure terms and the other provisions of this Protective Order if they receive such protected information. *No person shall scan or store any of Plaintiff's or the Decedent's medical records or medical information by any method, including but not limited to, computerized storage*, filming, photographing, microfiche or other similar method....

2. Also, upon conclusion of this case, *all medical records, and medical information, or any copies or summaries thereof, will either be destroyed* with a certificate from Defendants' counsel as an officer of the Court that the same has been done, *or all such material will be returned to Plaintiff's counsel without retention by Defendants' counsel or any other person who was furnished such materials and information pursuant to the terms of this Protective Order.* Provided however should Defendants' counsel desire to retain a copy of the protested [sic] medical records produced in this case, the same shall be permitted as long as those protected medical records are maintained in a sealed manner in Defense Counsel's file and not used for any other purpose whatsoever except upon further order of this Court or in response to lawful process after notice to the protected person, or in response to a lawful order of another Court with jurisdiction, or upon written consent of the protected person whose medical records and information is protected herein.

(Emphasis added). State Farm contends that it will be irreversibly harmed if this Order is enforced because the requirement that State Farm return or destroy Mrs. Blank's medical records is in direct contravention of a legislative rule promulgated by the Insurance Commissioner of West Virginia ("the Insurance Commissioner"), requiring the retention of such records. Violating that rule could jeopardize State Farm's license to sell insurance in West Virginia.

In its petition, State Farm seeks to prohibit the circuit court from enforcing this protective order. Two respondents are named herein, Mrs. Blank and Mr. Thomas's Estate. Mrs. Blank opposes State Farm's Petition for a Writ of Prohibition, while Mr. Thomas's Estate supports State Farm's position. Mr. Thomas's Estate further argues that it too will be irreversibly prejudiced if the circuit court is not prohibited from enforcing the protective order.

## II.

### STANDARD OF REVIEW

■ West Virginia Code § 53–1–1 (2008) provides that a "writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has [no] jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." Thus,

[p]rohibition lies only to restrain inferior courts from proceeding[ ] in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers, and may not be used as a substitute for [a petition for appeal] or certiorari. Syl. Pt.1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953).

Syl. Pt. 3, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

■ To aid in this consideration, this Court has previously established a general test for determining whether a lower tribunal has exceeded its legitimate powers:

[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests per-

sistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

*Hoover*, 199 W.Va. 12, 483 S.E.2d 12, Syl. Pt. 4. As to discovery orders in particular, this Court has previously held that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. Pt. 1, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992).

With these standards in mind, the Court turns to whether the circuit court exceeded its legitimate powers in issuing the protective order in this case.

## III.

## DISCUSSION

State Farm presents two grounds on which it contends the circuit court exceeded the scope of its authority in issuing the protective order. First, State Farm argues that the protective order requires it to violate a legislative rule promulgated by the Insurance Commissioner regarding the retention of insurance claim files. Second, State Farm asserts that the circuit court abused its authority in prohibiting State Farm from scanning and storing Mrs. Blank's medical records in an electronic format because Mrs. Blank failed to show good cause for needing such protection. The Court addresses each in turn.

### A. The Return or Destruction of the Medical Records

 As its primary argument, State Farm contends that complying with the terms of the protective order would cause it to violate a legislative rule promulgated by the Insurance Commissioner. Because such legislative rules are entitled to judicial deference,

State Farm contends that the circuit court clearly exceeded the scope of its authority in issuing a protective order that requires it to violate such a rule.

 In West Virginia, "[l]egislative power may be constitutionally delegated to an administrative agency to promulgate rules and regulations necessary and proper for the enforcement of a statute. W. Va. Const. art. VI, § 1; art. V, § 1." Syl. Pt. 3, *State ex rel. Callaghan v. W. Va. Civil Serv. Comm'n*, 166 W.Va. 117, 273 S.E.2d 72 (1980). "A regulation that is proposed by an agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, *W. Va.Code* § 29A-1-2(d) [1982], and such a legislative rule has the force and effect of law." Syl. Pt. 5, *Smith v. W. Va. Human Rights Comm'n*, 216 W.Va. 2, 602 S.E.2d 445 (2004). Importantly, "[a] valid legislative rule is entitled to substantial deference by the reviewing court. As a properly promulgated legislative rule, the rule can be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious." Syl. Pt. 2, *Summers v. W. Va. Consol. Pub. Ret. Bd.*, 217 W.Va. 399, 618 S.E.2d 408 (2005) (*quoting* Syl. Pt. 4, in part, *Appalachian Power Co. v. State Tax Dept.*, 195 W.Va. 573, 466 S.E.2d 424 (1995)); *but see* Syl. Pt. 4, *Harrison v. Commissioner, Div. of Motor Vehicles*, 226 W.Va. 23, 29–30, 697 S.E.2d 59, 65–66 (2010) (limiting the deference afforded to a valid legislative rule, when such rule attempts to alter or change this Court's interpretation of a statute without further amendment of the subject statute by the Legislature).

With regard to the regulation of the insurance industry in West Virginia, the West Virginia Legislature in Chapter 33 of the West Virginia Code has established a comprehensive set of laws governing insurers who operate in the State. *See* W. Va.Code § 33-1-1 to § 33-48-12 (2006 & Supp.2009). Article 2 of Chapter 33 establishes an administrative agency called the "insurance commissioner of West Virginia," which is tasked with enforcing the provisions of Chapter 33. *Id.* §§ 33-2-1 & 3. To facilitate the enforcement of these statutes, the Legislature dele-

gated rule-making authority to the Insurance Commissioner. *Id.* § 33–2–10.

As one of the Insurance Commissioner's duties, the Legislature has required that the Insurance Commissioner's office conduct an examination of all insurance companies operating in West Virginia at least once every five years. *Id.* § 33–2–9(c). To enforce this requirement, the Insurance Commissioner has promulgated a legislative rule that, among other things, establishes "[s]tandards for retention of records and documents that the commissioner may require to be produced by an insurer in connection with any analysis, review or examination provided for in W. Va.Code § 33–2–9." W. Va.C.S.R. § 114–15–1.1(b) (2008).

The legislative rule requires that insurers licensed to do business in West Virginia maintain, for all insurance policies issued, a record that includes all of the relevant policy documents. *Id.* § 114–15–4.3. Similarly, a record must be maintained for each insurance claim filed and must include, in relevant part,

> [f]or property and casualty: the file or files containing the notice of claim, claim forms, proof of loss or other form of claim submission, settlement demands, accident reports, police reports, adjustors' logs, claim investigation documentation, inspection reports, supporting bills, estimates and valuation worksheets, *medical records,* correspondence to and from insureds and claimants or their representatives, notes, contracts....

*Id.* § 114–15–4.4(a)(1) (emphasis added). Importantly,

> [a]ll insurer records within the scope of this rule must be retained for the lesser of:
>
> 1. The current calendar year plus five (5) calendar years;
>
> 2. From the closing date of the period of review for the most recent examination by the commissioner; or
>
> 3. A period otherwise specified by statute as the examination cycle for the insurer.

*Id.* § 114–15–4.2(b). Finally, an insurer "shall maintain its books, records and documents in a manner so that the commissioner can readily ascertain during an examination the insurer's compliance with the insurance laws and rules of this state ...," as well as its compliance with other national standards. *Id.* § 114–15–4.2.

Given the plain language of the legislative rule, State Farm asserts that insurers licensed in West Virginia must maintain thorough records for all insurance claims filed with the insurer, for a specific period of time that is roughly five to six years. It contends that the claim file must include all documents relevant to the claim, including the claimant's medical records. Because the circuit court's protective order requires State Farm to return or destroy Mrs. Blank's medical records prior to that five-to-six year time frame, State Farm argues that complying with the order will cause it to violate the Insurance Commissioner's legislative rule.

Mrs. Blank does not challenge the validity of the Insurance Commissioner's legislative rule, nor does she dispute the dilemma in which the protective order places State Farm. Rather, Mrs. Blank argues that prohibition is inappropriate in this action because State Farm has alternative means to challenge the circuit court's Order. Citing the first *Hoover* factor, whether the party seeking the writ of prohibition has no other adequate means to obtain the desired relief, Mrs. Blank argues that this issue could be decided on direct appeal and, therefore, it is not appropriate for prohibition. *See Hoover,* 199 W.Va. 12, 483 S.E.2d 12, Syl. Pt. 4.

Contrary to Mrs. Blank's assertions, however, State Farm cannot wait to resolve this issue on direct appeal. Pursuant to the circuit court's protective order, State Farm must return or destroy Mrs. Blank's medical records upon the conclusion of the civil action. Because following this directive would cause State Farm to violate the Commissioner's regulations, State Farm cannot, in good faith, accept the terms of the Order. Accordingly, State Farm has not viewed the medical records and, therefore, has not been able to evaluate Mrs. Blank's claims, nor prepare its defense for trial.

Mr. Thomas's Estate faces a similar predicament. Although State Farm hired coun-

sel to defend Mr. Thomas's Estate, that counsel owes its duty to the Estate, not to State Farm. *See* Syl. Pt. 7, *Barefield v. DPIC Cos., Inc.*, 215 W.Va. 544, 600 S.E.2d 256 (2004) ("When an insurance company hires a defense attorney to represent an insured in a liability matter, the attorney's ethical obligations are owed to the insured and not to the insurance company that pays for the attorney's services."). Counsel for the Estate, therefore, is not able to bind State Farm to any agreements or otherwise assert control over State Farm.

Mr. Thomas's Estate explains that its interests lie in settling Mrs. Blank's claims against it for the insurance policy limits, with a release of the Estate from all personal liability. Counsel for Mr. Thomas's Estate cannot pursue such a settlement, however, without discussing the Blank's medical records with State Farm because, as the insurer, State Farm must agree to any settlement paid from Mr. Thomas's insurance policy. Accordingly, counsel for the Estate is caught in the untenable position of needing to disclose the medical records to State Farm in order to facilitate a settlement, but being unable to do so because, under the protective order, she cannot certify that State Farm would return or destroy the records upon the conclusion of the case. Consequently, the protective order similarly prevents Mr. Thomas's Estate from being able to prepare for trial or take the steps necessary to reach a settlement in the case. For these reasons, the Court concludes that prohibition is the appropriate avenue by which to address this issue.

Moreover, the most important factor to consider under *Hoover*, whether the lower tribunal's order is clearly erroneous as a matter of law, is clearly met in this case. *See Hoover*, 199 W.Va. 12, 483 S.E.2d 12, Syl. Pt. 4. As State Farm contends, the circuit court's protective order plainly contradicts the terms of the Commissioner's legislative rule. Because that rule "has the force and effect of law," the circuit court's protective order which would require State Farm to violate the rule is erroneous as a matter of law. *See Smith*, 216 W.Va. 2, 602 S.E.2d 445, Syl. Pt. 5.

Remarkably, despite the plain language of the Insurance Commissioner's legislative rule, it appears that other plaintiffs in addition to Mrs. Blank have sought circuit court orders requiring the return or destruction of a claimant's medial records immediately upon conclusion of a civil action. In "West Virginia Informational Letter No. 172," issued by the Insurance Commissioner in September 2009 and addressed to "All Insurance Companies Licensed to do Business in the State of West Virginia," the Commissioner states that

> *[t]he OIC* [Office of the Insurance Commissioner] *has recently become aware that certain first and third party claimants involved in litigation concerning their respective claims have requested that the court order pertinent medical documentation to be destroyed or returned by the insurer at the conclusion of the litigation.* The OIC is charged with ensuring the orderly, fair and consistent application of laws enacted by the Legislature to protect the state's consumers of insurance products and services. To that end, the Legislature has given the OIC broad authority to conduct market conduct reviews of insurer claim files on a targeted or periodic basis. Such reviews include, as set forth above, a detailed assessment of all relevant claim records maintained by insurers. The applicable insurance laws and rules demand consistent and comprehensive maintenance of all essential claim records by insurers to ensure that the laws protecting consumers of this state are being followed and that claims are being properly resolved. *If records necessary for an adequate market conduct review are missing, the OIC will be substantially hindered in carrying out its legislative mandate and thus may subject insurer to penalties.*

(Emphasis added).

█ Because this is a reoccurring issue, the Court now explicitly holds that a court may not issue a protective order directing an insurance company to return or destroy a claimant's medical records prior to the time period set forth by the Insurance Commissioner of West Virginia in §§ 114–15–4.2(b) and 114–15–4.4(a) of the West Virginia Code

of State Rules for the retention of such records.

Because the protective order entered by the circuit court in this case requires State Farm to destroy or return Mrs. Blank's medical records "upon conclusion of the case," the Order is in direct contravention of the Insurance Commissioner's regulations, which require insurers to maintain claim files, including medical records, for approximately five to six calendar years. *See* W. Va.C.S.R. § 114–15–4.2(b). For these reasons, the circuit court exceeded its legitimate powers in issuing the protective order and the Court grants State Farm's request for prohibition on this ground.

## B. Electronic Storage of Medical Records

■ As a second matter, the circuit court's protective order specifically precludes State Farm, or any other entity, from electronically scanning or storing Mrs. Blank's medical records. The Order does not provide a basis for such restriction.

Mrs. Blank argues that State Farm must be prohibited from scanning and storing her medical records electronically to prevent non-authorized State Farm employees from accessing the records and to prevent State Farm from disseminating the records to third-parties, such as the National Insurance Crime Bureau ("NICB"), a private organization that investigates insurance fraud. Mrs. Blank argues that dissemination of her medical information to third parties violates her rights to privacy and confidentiality.

State Farm, on the other hand, contends that electronic storage of claim files is an economically efficient way for it to maintain organized files and it asserts that its customers benefit from such savings in the form of lower premiums. It further asserts that it has internal policies in place to prevent the unauthorized access or distribution of an insured's medical records and, thus, it argues that Mrs. Blank's fears are unfounded.

While not required to store records electronically, State Farm points out that the Insurance Commissioner has approved the use of electronic claim files. Specifically, an insurer may maintain electronic claim files as long as such files are "archival in nature, so as to preclude the alteration of the record after the initial transfer to a computer format." W. Va.C.S.R. § 114–15–4.7(b). The Insurance Commissioner further requires that such files "be maintained according to written procedures developed and adhered to by the insurer." *Id.* Furthermore, the Insurance Commissioner requires that all records be maintained in a manner "so that the commissioner can readily ascertain during an examination the insurer's compliance with the insurance laws and rules of this state...." *Id.* § 114–15–4.2. State Farm asserts that it complies with all of the Insurance Commissioner's requirements for maintaining electronic files, and that storing records electronically permits it to quickly comply with any record requests.

To further protect the confidentiality of an insured's medical records, the Insurance Commissioner has promulgated a legislative rule, W. Va.C.S.R. § 114–57–15 (2002), based on the model privacy rules of the National Association of Insurance Commissioners, which are patterned after the federal Gramm–Leach–Bliley Act, 15 U.S.C. § 6801 (2009), *et seq.* Among other things, this rule prohibits insurers from disclosing "nonpublic personal health information" without authorization by the individual. W. Va.C.S.R. § 114–57–15.1. Thus, insurers operating in West Virginia are required to prevent the unauthorized disclosure of confidential medical records contained in claim files, whether those files are stored electronically or in paper format.

In seeking prohibition, State Farm argues that the circuit court exceeded the scope of its authority by prohibiting electronic storage of Mrs. Blank's medical records because Mrs. Blank failed to show good cause for the protective order. Although trial courts generally have broad discretion in issuing protective orders, West Virginia Rule of Civil Procedure 26(c)

> requires that good cause be shown for a protective order. This puts the burden on the party seeking relief to show some plainly adequate reason therefor. The courts have insisted on a *particular and*

*specific demonstration of fact,* as distinguished from stereotyped and conclusory statements, in order to establish good cause.

*State ex rel. Shroades v. Henry,* 187 W.Va. 723, 728, 421 S.E.2d 264, 269 (1992) (*quoting* 8 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* § 2035 at 264–65 (1970)) (emphasis added).[4]

Although Mrs. Blank contends that she needs a protective order to ensure that her medical information will remain private, she fails to present the "particular and specific demonstration of fact" required under Rule 26(c) to establish good cause for the order. *See Shroades,* 187 W.Va. at 728, 421 S.E.2d at 269. Rather, Mrs. Blank merely alleges, in a conclusory manner, that the electronic storage of her records will allow State Farm to disseminate them to third-parties[5] and "keep them indefinitely in a manner in which all State Farm employees could access them." She presents no evidence, however, that State Farm has failed to comply with West Virginia Code of State Rules § 114–57–15.1, nor any facts which would show a reasonable basis for believing that State Farm intends to disseminate her "nonpublic personal health information" without her consent in the future. Indeed, Mrs. Blank has not even presented any evidence regarding State Farm's policies for the retention of such records, nor does she attempt to explain why the Insurance Commissioner's legislative rule governing the confidentiality of a claimant's medical records is insufficient to protect her information.

The only factually based allegation presented by Mrs. Blank as a basis for seeking the protective order is a 1999 case involving State Farm in Colorado. In *A.T. v. State Farm Mutual Automobile Insurance Company,* 989 P.2d 219 (Colo.App.1999), State Farm obtained medical information about a psychological disorder of one of its insured's, A.T., during arbitration to settle an uninsured motorist claim. State Farm then used those records while cross-examining A.T., who was also a chiropractor, in a subsequent, unrelated suit in which A.T. was testifying in her professional capacity. *Id.* at 220. The Colorado Court of Appeals upheld such use of the medical records, finding that the arbitration record was a public document and that A.T. had failed, at the time of the original litigation, to seek a protective order to preserve the confidentiality of her medical records. *Id.* at 221.

Although Mrs. Blank contends that this case exemplifies State Farm's improper use of an individual's medical records obtained through an insurance claim, the records used by State Farm in *A.T.* were, in fact, public records by virtue of their use in a public

---

4. West Virginia Rule of Civil Procedure 26(c), entitled "Protective Orders," provides in relevant part:

[u]pon motion by a party or by the person from whom discovery is sought, including a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) That the discovery not be had;

(2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) That certain matters not be inquired into or that the scope of the discovery be limited to certain matters;

. . .

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

5. Mrs. Blank appears to be concerned that State Farm will transmit her confidential medical information to the NICB, which maintains a national database used to combat insurance fraud. While the NICB, in its amicus curiae brief, and State Farm both admit that certain claim information is shared between them, State Farm contends that it complies with West Virginia's laws protecting confidential medical information and, thus, does not provide any nonpublic medical information to the NICB without the patient's consent. For her part, Mrs. Blank fails to present any evidence that State Farm does share nonpublic medical information with the NICB or any other entity.

**148**

arbitration proceeding. Thus, A.T. no longer had any privacy interest in those records. Here, none of Mrs. Blank's medical records will become public unless she consents to their dissemination or until they are introduced at trial. Whether the records will be made public by virtue of being introduced at trial, or whether they can be sealed at that time, is an entirely separate issue not addressed by the circuit court's protective order in this case.

Moreover, the electronic storage of these medical records is wholly unrelated to whether State Farm could ever use the records in a subsequent, unrelated action. Indeed, there is no indication that the records at issue in *A.T.* were stored electronically or that State Farm could not have used the records in that case had they not been stored electronically. Accordingly, the one "particular and specific demonstration of fact" proffered by Mrs. Blank does not create good cause for issuing a protective order barring the electronic storage of the medical records in this case. *See Shroades,* 187 W.Va. at 728, 421 S.E.2d at 269.

In the absence of any factual support, the vague fears articulated by Mrs. Blank do not constitute the "particular and specific demonstration of fact" that this Court requires from a party seeking a protective order. *See id.* The circuit court, therefore, clearly erred in issuing a protective order prohibiting the electronic storage of Mrs. Blank's medical records, as Mrs. Blank did not show good cause for such order pursuant to Rule 26(c) of the West Virginia Rules of Civil Procedure. Accordingly, the Court grants the writ of prohibition sought by State Farm to prevent the enforcement of the protective order on this ground as well.

## IV.

### CONCLUSION

For the reasons stated herein, the Court grants the writ of prohibition sought by State Farm to prevent enforcement of the protective order entered by the Circuit Court of

Harrison County, West Virginia, on February 11, 2010.

Writ granted.