741 S.E.2d 75

STATE of West Virginia ex rel. STATE FARM MUTUAL AUTOMOBILE IN-SURANCE COMPANY, Petitioner

v.

Honorable John Lewis MARKS, Jr., Judge of the Circuit Court of Harrison County, et al., Respondents.

Nationwide Mutual Insurance Company, Defendant Below, Petitioner

v.

Carmella J. Faris and Robert Faris, Plaintiffs Below, Respondents.

Nos. 12–0304, 12–0210.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 16, 2012.

Decided Nov. 15, 2012.

**520**

Charles S. Piccirillo, Shaffer & Shaffer, PLLC, Madison, WV, Denise D. Pentino, Dinsmore & Shohl, LLP, Wheeling, WV, Attorneys for the Petitioner, State Farm Mutual Insurance Co.

David J. Romano, Romano Law Office, Clarksburg, WV, Attorney for the Respondents, Matthew L. Huggins and Carmella J. Faris and Robert Faris.

Mark A. Behrens, PHV, Cary Silverman, PHV, Shook, Hardy & Bacon, L.L.P., Washington, District of Columbia, Ancil G. Ramey, Steptoe & Johnson PLLC, Huntington, WV, Attorneys for Amicus Curiae, The American Tort Reform Association.

Brian D. Morrison, Bailey & Wyant, PLLC, Charleston, WV, Attorney for Amicus Curiae, Defense Trial Counsel of West Virginia.

Marvin W. Masters, Kelly Elswick–Hall, Richard A. Monahan, The Masters Law Firm LC, Charleston, WV, Attorneys for Amicus Curiae, West Virginia Association for Justice.

James D. Lamp, Matthew J. Perry, Lamp, O'Dell, Bartram, Levy, Trautwein & Perry, PLLC, Huntington, WV, Attorneys for Amici Curiae, West Virginia Insurance Federation, American Insurance Association, and The National Association of Mutual Insurance Companies.

Thomas V. Flaherty, Tammy R. Harvey, Kiersan C. Smith, Flaherty Sensabaugh Bonasso, PLLC, Charleston, WV, Attorneys for the Petitioner, Nationwide Mutual Insurance Co.

Corey L. Palumbo, Thomas Hancock, Bowles Rice McDavid Graff & Love LLP, Charleston, West Virginia, Attorneys for Amicus Curiae, Brickstreet Mutual Insurance Company.

James G. Hertz, PHV, Andrew J. Sosnowski, PHV, Des Plaines, Illinois, David K. Hendrickson, R. Scott Long, Barbara A. Samples, Hendrickson & Long, PLLC, Charleston, WV, Attorneys for Amici Curiae, National Insurance Crime Bureau and Coalition Against Insurance Fraud.

Andrew R. Pauley, Victor A. Mullins, Offices of the West Virginia Insurance Commissioner, Charleston, WV, Attorneys for Amicus Curiae, West Virginia Insurance Commissioner.

D.C. Offutt, Jr., Matthew Mains, Offutt Nord Burchett, PLLC, Huntington, WV, Attorneys for Amicus Curiae, West Virginia Mutual Insurance Company, Inc.

DAVIS, Justice:

For the third year in a row, this Court has been asked to consider whether medical protective orders are valid and enforceable to limit the dissemination and retention of medical records obtained through discovery.[1] Such orders have been entered in lawsuits filed by plaintiffs seeking compensation for the injuries they have sustained in motor vehicle accidents caused by other motorists. Repeatedly, the insurers from whom such compensation has been sought have requested this Court,[2] the United States Supreme Court,[3] and a federal district court[4] to invali-

---

**1.** We previously have been asked to consider variations of this same substantive matter in 2010 and 2011. *See State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell,* 226 W.Va. 138, 697 S.E.2d 730 (2010) (hereinafter *"Bedell I"*) and *State ex rel. State Farm Mut. Auto. Ins. Co. v.*

*Bedell,* 228 W.Va. 252, 719 S.E.2d 722 (2011) (hereinafter *"Bedell II"*).

**2.** *See supra* note 1.

**3.** *See State Farm Mut. Auto. Ins. Co. v. Bedell,* —— U.S. ——, 132 S.Ct. 761, 181 L.Ed.2d 508 (2011).

date these protective orders as burdensome, unnecessary, restrictive, intrusive, and/or unconstitutional. And, each time the reviewing Court has examined these medical protective orders, it has upheld the medical protective order as substantively valid and enforceable[5] as a proper exercise of the issuing court's supervisory authority over discovery.[6] In the cases *sub judice*, we again are asked to invalidate the subject medical protective orders. Again, however, we decline the invitation to do so.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Because the errors assigned in each of the cases *sub judice* are substantially the same, they have been consolidated for this Court's consideration and resolution. The facts giving rise to each insurance company's request for relief are as follows.

### A. Case Number 12–0304: State of West Virginia ex rel. State Farm Mutual Automobile Insurance Company v. Marks

On June 6, 2008, Matthew L. Huggins (hereinafter "Mr. Huggins") was injured in a motor vehicle accident with Thomas Shuman (hereinafter "Mr. Shuman"). Thereafter, on May 14, 2010, Mr. Huggins filed a cause of action against Mr. Shuman; Mr. Shuman's employer, Woodward Video, LLC; and the owner of Woodward Video, Brian Woodward. In his attempt to recover for the injuries he sustained, Mr. Huggins filed a claim against the defendants' insurer, Nationwide Mutual

Insurance Company (hereinafter "Nationwide"), as well as claims for medical payments and underinsured motorist benefits (hereinafter "UIM benefits") against his own insurer, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"). Mr. Huggins disagreed with Nationwide over the terms governing the disclosure of his medical records and information to Nationwide, and State Farm eventually became involved in the dispute and requested the circuit court to stay its decision regarding a medical protective order pending the United States Supreme Court's resolution of State Farm's appeal in *Bedell II*.

The circuit court denied State Farm's requested stay and, on May 23, 2011, the circuit court entered a "Protective Order Granting Plaintiff Protection For His Confidential Medical Records and Medical Information," which is at issue herein. Nationwide and State Farm objected to the terms of the order, contending, among other things, that the medical protective order was too restrictive because it affected the insurers' ability to retain and report the information to governmental agencies regulating insurers and to retain and utilize such information in its claims files. State Farm renewed its request for a stay of the proceedings or for modification of the protective orders terms, which relief the circuit court refused by order entered December 7, 2011. The circuit court consolidated this case with the companion case presently before the Court, *i.e.*, Case Number 12–0210, and, on January 13, 2012, the circuit court entered an order affirming the medical protective orders entered in both

---

4. *See Small v. Ramsey,* 280 F.R.D. 264 (N.D.W.Va.2012).

5. *See State Farm Mut. Auto. Ins. Co. v. Bedell,* —— U.S. ——, 132 S.Ct. 761, 181 L.Ed.2d 508 (2011); *Small v. Ramsey,* 280 F.R.D. 264 (N.D.W.Va. 2012); *State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell,* 228 W.Va. 252, 719 S.E.2d 722 (2011) *(Bedell II); State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell,* 226 W.Va. 138, 697 S.E.2d 730 (2010) *(Bedell I).*

6. While we upheld the substance of the medical protective order in *Bedell I,* we nevertheless established limits on the order's document retention temporal requirements to permit insurers to comply with their mandatory statutory reporting obligations. *See generally* Syl. pt. 7, *Bedell I,* 226 W.Va. 138, 697 S.E.2d 730 ("A court may

not issue a protective order directing an insurance company to return or destroy a claimant's medical records prior to the time period set forth by the Insurance Commissioner of West Virginia in §§ 114–15–4.2(b) and 114–15–4.4(a) of the West Virginia Code of State Rules for the retention of such records."). *See also Warren v. Rodriguez–Hernandez,* No. 5:10CV25, 2010 WL 3668063 (N.D.W.Va. Sept. 15, 2010) (construing plaintiffs' request for medical protective order as request for preliminary injunction because discovery had not yet begun and denying preliminary injunction to limit disclosure of medical records because relief requested by plaintiffs would interfere with insurer's mandatory anti-fraud reporting obligations).

cases. From this adverse ruling, State Farm requests this Court to issue a writ of prohibition to prevent the circuit court from enforcing the subject medical protective order.

### B. Case Number 12–0210: Nationwide Mutual Insurance Company v. Faris

On May 2, 2008, Carmella J. Faris (hereinafter "Mrs. Faris") was injured in a motor vehicle accident with Linda Lee Harding (hereinafter "Ms. Harding"), who was insured by Nationwide. Mrs. Faris sought to recover benefits for her injuries from Ms. Harding's Nationwide policy and signed medical authorizations to permit Nationwide to obtain her medical records and bills relating to the injuries she sustained in the accident. Thereafter, Mrs. Faris, through counsel, revoked the authorizations and, on April 5, 2010, filed the instant lawsuit against Ms. Harding to obtain compensation for her injuries.

On July 12, 2011, the circuit court entered a "Protective Order Granting Plaintiffs Protection For Their Confidential Medical Records and Medical Information," which is at issue herein. Nationwide objected to the terms of the order, contending, among other things, that the medical protective order was too restrictive because it affected its ability to retain and report the information to governmental agencies regulating insurers and to retain and utilize such information in its claims files. The circuit court consolidated this case with the companion case presently before the Court, i.e., Case Number 12–0304, and, on January 13, 2012, the circuit court entered an order affirming the medical protective orders entered in both cases. From this adverse ruling, Nationwide appeals to this Court.

## II.

### STANDARD OF REVIEW

Given the different procedural posture of each of the cases sub judice, our consideration and decision of each case necessarily will be governed by different standards of review.

### A. Case Number 12–0304: State Farm's Petition for Writ of Prohibition

State Farm seeks relief from the circuit court's order enforcing the medical protective order through a petition for writ of prohibition. We previously have held that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. pt. 1, State Farm Mut. Auto. Ins. Co. v. Stephens, 188 W.Va. 622, 425 S.E.2d 577 (1992). Nevertheless, "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va.Code 53-1-1." Syl. pt. 2, State ex rel. Peacher v. Sencindiver, 160 W.Va. 314, 233 S.E.2d 425 (1977). Therefore, a litigant seeking relief through this extraordinary remedy bears a heavy burden and must demonstrate his/her entitlement to the issuance of such a writ:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996). Mindful of this standard, we will consider State Farm's request for prohibitory relief.

### B. Case Number 12–0210: Nationwide's Appeal

■■■ Nationwide seeks relief from the circuit court's order enforcing the medical protective order through an appeal to this Court. "Generally this Court reviews a circuit court's ruling on a discovery request for an abuse of discretion." *State ex rel. Ward v. Hill,* 200 W.Va. 270, 275, 489 S.E.2d 24, 29 (1997). This is so because

> [a] trial court is permitted broad discretion in the control and management of discovery, and it is only for an abuse of discretion amounting to an injustice that we will interfere with the exercise of that discretion. A trial court abuses its discretion when its rulings on discovery motions are clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock our sense of justice and to indicate a lack of careful consideration.

Syl. pt. 1, *B.F. Specialty Co. v. Charles M. Sledd Co.,* 197 W.Va. 463, 475 S.E.2d 555 (1996). *Accord* Syl. pt. 1, *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995) ("The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings.... Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard."). In keeping with this deferential standard of review, we will consider Nationwide's assigned errors.

### III.

### DISCUSSION

As we noted at the outset of this opinion, this Court has now been requested, on three occasions, to consider and condemn medical protective orders that limit the manner in which a party, *i.e.,* insurance company, receiving an opponent's confidential medical records may use and disseminate such information. A painstaking comparison of the medical protective order approved by this Court in *Bedell II*[7] and the medical protective orders entered by the circuit court in the cases *sub judice* prove them to be identical with only two appreciable differences: (1) slight and insubstantial variances in the stylistic and grammatical preferences employed by the particular circuit court judge issuing the order of protection and (2) inclusion in the instant protective order of additional language that provides to the recipient of such information significant safeguards should that party believe that it is required to disclose the information in fulfillment of its duties under any applicable law.

In their quest to invalidate the subject medical protective orders, State Farm and Nationwide have advanced numerous arguments to this Court regarding (1) the effect the orders might have on their mandatory statutory reporting obligations; (2) the perceived burdens attending their compliance with such orders; (3) alleged constitutional implications related to enforcement of the orders and the attendant limitations on the use of the medical information subject thereto; (4) the lack of good cause for the orders' issuance against insurance companies in light of the Insurance Commissioner's promulgation of privacy regulations; and (5) a request for a definitive definition of "medical record." Each of these assigned errors will be reviewed and resolved in turn.

### A. Mandatory Reporting Obligations

■■■ The first issue we will consider is the assertion by State Farm and Nationwide that compliance with the circuit court's entry of the subject medical protective orders will preclude them from fulfilling their mandatory reporting obligations imposed by the federal government, this State, and our sister states. Among the reporting duties they cite are statutes and regulations designed to identify, address, and prevent fraud;[8] evalu-

---

7. *See generally Bedell II,* 228 W.Va. 252, 719 S.E.2d 722.

8. *See, e.g.,* 42 U.S.C. § 1395y(b)(8) (2011) (Main Vol.2012) (concerning insurer's obligations under Medicare Secondary Payer Act); W. Va.Code

ate claims handling processes;[9] and examine and establish insurance rates.[10] State Farm and Nationwide additionally express concern that compliance with the instant protective orders will impede their ability to comply with orders issued by other courts.[11] While we appreciate these concerns and applaud the insurers' desire to fulfill their mandatory obligations, the subject medical orders of protection entered in the cases *sub judice* have incorporated significant accommodations that adequately address these concerns.

■ To begin, in *Bedell I*, this Court specifically prohibited a protective order from requiring document return or destruction prior to the expiration of the reporting period imposed by the West Virginia Insurance Commissioner for the retention of records:

> A court may not issue a protective order directing an insurance company to return or destroy a claimant's medical records prior to the time period set forth by the Insurance Commissioner of West Virginia in §§ 114–15–4.2(b) and 114–15–4.4(a) of the West Virginia Code of State Rules for the retention of such records.

§ 33–41–5(a) (2004) (Repl.Vol.2011) ("A person engaged in the business of insurance having knowledge or a reasonable belief that fraud or another crime related to the business of insurance is being, will be or has been committed shall provide to the commissioner the information required by, and in a manner prescribed by, the commissioner."). *See also* W. Va. C.S.R. § 114–57–15.2 (2002) ("Nothing in this section shall prohibit, restrict or require an authorization for the disclosure of nonpublic personal health information by a licensee for the performance of the following insurance functions by or on behalf of the licensee: claims administration; claims adjustment and management; detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity; underwriting; policy placement or issuance; loss control; ratemaking and guaranty fund functions; reinsurance and excess loss insurance; risk management; case management; disease management; quality assurance; quality improvement; *performance evaluation; provider* credentialing verification; utilization review; peer review activities; actuarial, scientific, medical or public policy research; grievance procedures; internal administration of compliance, managerial, and information systems; policyholder service functions; auditing; reporting; database security; administration of consumer disputes and inquiries; external accreditation standards; the replacement of a group benefit plan; activities in connection with a sale, merg-

Syl. pt. 7, 226 W.Va. 138, 697 S.E.2d 730. In accordance with this holding, the medical protective orders at issue in the cases *sub judice* specifically direct that the documents subject to the orders are not required to be returned or destroyed until *after* the expiration of this reporting period:

> [S]hould any insurance carrier desire to retain such confidential medical records, and medical information beyond the final dismissal of this case, they may do so: provided, however, that upon conclusion of the appropriate period established by W. Va.C.S.R. § 114–15–4.2(b), all medical records, and medical information, or any copies or summaries thereof, will either be destroyed, with a certificate from Defendants' counsel as an officer of the Court, or by an officer or other authorized person of the insurance carrier, that the destruction has been completed as set forth in this Protective Order, or alternatively all such material will be returned to Plaintiff's counsel without any retention in any format by any insurance carrier or any other

er, transfer or exchange of all or part of a business or operating unit; any activity that permits disclosure without authorization pursuant to the federal Health Insurance Portability and Accountability Act privacy rules promulgated by the U.S. Department of Health and Human Services; disclosure that is required, or is one of the lawful or appropriate methods, to enforce the licensee's rights or the rights of other persons engaged in carrying out a transaction or providing a product or service that a consumer requests or authorizes; and any activity otherwise permitted by law, required pursuant to governmental reporting authority, or to comply with legal process. Additional insurance functions may be added with the approval of the commissioner to the extent they are necessary for appropriate performance of insurance functions and are fair and reasonable to the interest of consumers.").

9. *See* W. Va.C.S.R. § 114–57–15.2.

10. *See* W. Va.C.S.R. § 114–57–15.2.

11. The insurers have not presented evidence demonstrating that the circuit court's enforcement of the subject medical protective orders actually has interfered with their obligations under orders issued by other tribunals but, rather, that such a result is a possible consequence of their compliance with the temporal requirements of such orders.

person who was furnished such materials and information pursuant to the terms of this Protective Order. Specifically, under no circumstances shall the medical records and medical information or any copies or summaries thereof, be kept longer than the provisions of § 114–15–4.2(b) require, with the retention period beginning to run at the conclusion of this case, including any possible appeal period. *The retention period shall continue until the lesser of "the current calendar year plus five (5) calendar years," or "from the closing date of the period of review for the most recent examination by the commissioner," or "a period otherwise specified by statute as the examination cycle for the insurer."* W. Va. C.S.R. § *114–15–4.2(b).*

*Protective Order Granting Plaintiff Protection for His Confidential Medical Records and Medical Information,* No. 10–C–176–1, at pp. 2–3, ¶ 2 (Cir. Ct. Harrison Cnty., W. Va. May 23, 2011), *petition for writ of prohibition filed,* W. Va. S.Ct. No. 12–0304; *Protective Order Granting Plaintiffs Protection for Their Confidential Medical Records and Medical Information,* No. 10–C–123, at pp. 2–3, ¶ 2 (Cir. Ct. Harrison Cnty., W. Va. July 12, 2011), *petition for appeal filed,* W. Va. S.Ct. No. 12–0210 (emphasis added; footnote omitted).

Moreover, unlike the medical protective order we previously approved in *Bedell II,* the medical protective orders at issue herein include additional language that specifically addresses the concerns voiced by State Farm and Nationwide that compliance with the circuit court's orders in the underlying proceedings will negatively impact their ability to fulfill their obligations to other governmental entities and judicial tribunals.

[D]uring the period of possession of the protected medical records and information, and before destruction or return is required by this Protective Order, should any person believe they are required to produce such protected information to a person or entity by operation of law, then application to permit such disclosure may be made by motion to the Court for such disclosure or by an agreed order.

*Protective Order,* No. 10–C–176–1, at p. 3, ¶ 2 (W.Va.S.Ct. No. 12–0304); *Protective Order,* No. 10–C–123, at p. 3, ¶ 2 (W.Va.S.Ct. No. 12–0210). Rather than restricting the insurers' ability to fulfill their mandatory reporting requirements as claimed by State Farm and Nationwide, the inclusion of this additional language actually facilitates the insurers' compliance therewith.

Furthermore, as with the medical protective order at issue in *Bedell II,*[12] the medical protective orders in the cases *sub judice* also permit the party receiving the protected information to retain a copy thereof under seal.

[S]hould Defendants' counsel desire to retain a copy of the protected medical records produced in this case, the same shall be permitted only if those protected medical records are maintained in a sealed manner in Defense Counsel's file and not used for any other purpose whatsoever except upon further order of this Court, or in response to lawful process after notice to the protected person, or in response to a lawful order of another Court with jurisdiction, or upon written consent of the protected person whose medical records and information is protected herein.

*Protective Order,* No. 10–C–176–1, at p. 3, ¶ 2 (W.Va.S.Ct. No. 12–0304); *Protective Order,* No. 10–C–123, at p. 3, ¶ 2 (W.Va.S.Ct. No. 12–0210). This provision, then, would permit an insurer to request permission to use such protected information to fulfill its mandatory reporting obligations *after* the medical protective order, itself, has expired.

Finally, to the extent that State Farm and Nationwide claim that the laws of other jurisdictions, *i.e.,* Illinois and New York, prohibit them from removing information from their claims files, we find this interpretation of the pertinent statutes to be mistaken. While insurers may not *sua sponte* remove information from their claims files in Illinois, the governing statutes in that state do, in fact, provide a method by which insurers may request permission to purge information from their claims files. *See* Ill. Admin. Code tit. 50, § 901.20 (2012) (providing form affidavit for insurer to use to request permission to

---

12. *See Bedell II,* 228 W.Va. at 266, 719 S.E.2d at 736.

destroy records). *See also Small v. Ramsey,* 280 F.R.D. 264, 278–80 (N.D.W.Va.2012) (discussing relevant provisions of Illinois insurance law). Likewise, we find the insurers' argument regarding the laws of the State of New York to be disingenuous. Under the relevant New York statute, insurers are required to maintain "[a] claim file for six calendar years" following the resolution of the claim and corresponding closing of the claim file or until an examination report has been filed, whichever is longer. *See* N.Y. Comp.Codes R. & Regs. tit. 11, § 243.2(b)(4) (1996). Insofar as that jurisdiction establishes a finite period within which the records subject to the medical protective order must be kept, if an insurer actually faces a conflict between compliance with this provision and the terms of the medical protective order, the insurer may request modification of the time period within which the order of protection remains in effect. *See Small v. Ramsey,* 280 F.R.D. at 280–81 (rejecting similar challenge suggesting impossibility of dual compliance with West Virginia protective order and New York law enumerating insurance claim files retention requirements). It is important to note, however, that neither State Farm nor Nationwide has demonstrated an actual conflict between their allegiance to both the subject West Virginia circuit court protective order and the referenced New York insurance statute, but, rather, a mere hypothetical quandary that they predict might arise in the future.

It is apparent, then, that the medical protective orders at issue herein expressly recognize that a party receiving the protected information may be obligated to disclose the same to fulfill its mandatory reporting obligations. Because the protective orders make specific provision for this potentiality, we reject the arguments of State Farm and Nationwide to the contrary.

### B. Burdensome Compliance

■ Next, we consider the contention of State Farm and Nationwide that compliance with the "return or destroy" directive of the medical protective orders is unduly burdensome insofar as their claims files are maintained electronically and cannot be substantially modified after their creation. We

previously have reviewed and rejected a similar argument.

In *Bedell I,* we briefly addressed a corollary issue of whether a protective order could bar an insurer from storing an injured party's medical records electronically, concluding that the injured plaintiff had not demonstrated good cause to "bar[] the electronic storage of the medical records in this case." 226 W. Va. at 148, 697 S.E.2d at 740 (citation omitted). We therefore upheld the electronic maintenance and storage of materials subject to a protective order, but we did not, in *Bedell I,* reach the present issue of whether a protective order could then require the removal of such information from electronic claims files upon the conclusion of the subject litigation.

In *Bedell II,* however, we denied relief based upon a similar complaint that compliance with the medical protective order at issue therein was burdensome and/or impossible because it required the destruction of the insurer's business records and because it required the insurer to monitor its dissemination of the protected material. We rejected these arguments because the protective order required the return or destruction of only the medical records and medical information obtained pursuant to the order, and not of the insurer's entire claim file, which it properly could maintain as a business record. 228 W.Va. at 265–71, 719 S.E.2d at 735–41. We also determined that the circuit court had acted reasonably in entering a protective order to safeguard the injured plaintiffs' medical records insofar as such order was consistent with, and less restrictive than, protective orders authorized by other tribunals in similar circumstances. *See generally Bedell II,* 228 W.Va. at 272–74, 719 S.E.2d at 742–44 (discussing language of medical protective orders of courts approved by other jurisdictions).

Here, we are asked to consider another variation of the "burdensome compliance" argument: the insurers' information systems will suffer calamitous consequences if they comply with the terms of the medical protective orders because they electronically maintain the claims files in which they store the protected information and electronically

share this data with other entities in satisfaction of their mandatory reporting obligations. A federal court confronted with a complaint that compliance with the terms of a protective order requiring the return or destruction of protected information would "require [the receiving party] to 'cannibalize' their files on th[e] case" rejected the same and required compliance with the protective order's terms. *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 130 F.R.D. 281, 282 (S.D.N.Y.1989). In doing so, the court admonished that "[p]rotective orders are not issued lightly by this court, and they cannot be dispensed with when they finally become inconvenient to one of the parties." *Id.*, 130 F.R.D. at 283. We concur with this reasoning.

While we appreciate the insurers' lament that compliance with this provision of the protective order may prove to be difficult, we do not believe that difficulty equates to impossibility. Modern information systems are remarkable in their ability to maintain large quantities of data in a finite space and to share this information electronically with virtually any other data system in the world. Such systems also are invaluable in their ability to be programmed to satisfy the exact needs of a precise user. From the representations of State Farm and Nationwide, it appears that neither insurer currently has in place software or hardware components that would allow them to extract protected medical records and medical information from their electronic claims files that would permit them to comply with the return or destroy provisions of the subject protective orders. That does not mean, however, that slight technological modifications could not be developed to address this contingency to permit the generation of reports of protected materials that then would allow the extraction of such documents upon the expiration of an

order of protection. Thus, for the same reasons we previously have denied relief on this basis, we again find this contention to be without merit.

### C. Constitutional Issues

State Farm and Nationwide additionally suggest that enforcement of the medical protective orders entered by the circuit court impermissibly infringes upon their constitutional right to free speech. The insurers further contend that the protective order impinges their fundamental property and liberty interests by violating the full faith and credit as well as the due process clauses.

With respect to their first constitutional contention, the insurers complain that the protective orders intrude upon their First Amendment right to free speech [13] because the orders interfere with their ability to communicate with state and federal regulatory agencies and to share the data they have collected therewith. In this regard, State Farm and Nationwide contend that such restriction neither serves "a compelling governmental interest" nor is "narrowly tailored" to serve such interest. *Citing Capital Cities Media, Inc. v. Toole*, 463 U.S. 1303, 103 S.Ct. 3524, 77 L.Ed.2d 1284 (1983). To the extent that the insurers use this information both in their internal operations and with regard to their external regulatory reporting duties, they claim that the restrictions imposed upon them by the protective orders infringe upon their right to free and unfettered communication.

In the same vein, State Farm and Nationwide argue further that the subject protective orders violate the full faith and credit clause [14] because they elevate this State's judicial rulings over the obligations imposed upon insurers by other states. Likewise, the insurers claim that the protective orders adversely affect their due process rights [15]

---

**13.** The First Amendment to the United States Constitution prohibits government action that places restrictions on speech: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

**14.** Article IV, section 1 of the United States Constitution requires, in pertinent part, that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State...."

**15.** Pursuant to West Virginia Constitution Article III, section 10, "[n]o person shall be deprived of life, liberty, or property, without due process of law...."

because the orders force them to choose between adhering to the protective orders issued in this State or fulfilling their obligations imposed by other states' insurance laws, where the choice of either one necessarily implies the violation of the other. Finally, State Farm and Nationwide contend that the protective orders impermissibly intrude upon their fundamental property and liberty interest in the development and maintenance of their internal records.

Although couched in constitutional terms in this assignment of error, previously in this opinion we already have considered and rejected the perceived hindrances to the insurers' ability to comply with their mandatory reporting obligations imposed upon them by this State, other states, and the federal government and to maintain their claims files as they see fit. Merely changing the phraseology in which such assignments of error are presented to this Court does not alter our assessment that the medical protective orders entered in the cases *sub judice* adequately address the insurers' mandatory reporting obligations and facilitate their compliance therewith while allowing them to maintain their claims files in the manner of their choosing.

To the extent, however, that matters of constitutional import have been injected into these issues, we note further that these same issues have been presented to the United States Supreme Court and summarily rejected in its denial of a writ of certiorari in *Bedell II. See State Farm Mut. Auto. Ins. Co. v. Bedell,* —— U.S. ——, ——, 132 S.Ct. 761, 761–62, 181 L.Ed.2d 508 (2011). Moreover, the United States District Court for the Northern District of West Virginia also has considered such perceived implications of a medical protective order and has found it to pass constitutional muster. *See generally Small v. Ramsey,* 280 F.R.D. 264 (considering and rejecting insurer's First Amendment challenge to terms of medical protective or-

der). Accordingly, we reject the insurers' constitutional contentions.

### D. Insurance Commissioner's Regulations

■ State Farm and Nationwide further argue that the injured plaintiffs herein have not demonstrated good cause for the issuance of the medical protective orders insofar as the West Virginia Insurance Commissioner has promulgated numerous regulations that dictate how an insurer may use and disseminate confidential medical information.[16] In light of these privacy protections set forth in the insurance regulations with which they must comply, State Farm and Nationwide suggest that, while a medical protective order may be warranted to safeguard the plaintiffs' medical records when they are disclosed to some parties, such protective orders are not necessary to protect medical records disclosed to insurance companies because insurers already are bound by the Insurance Commissioner's privacy rules. While we appreciate the insurers' efforts to obtain preferential treatment and special exemptions from medical protective orders, we disagree with the proposition they assert. Moreover, we are concerned with the implications that the adoption of such a standard would have upon the exclusive authority of the courts to manage discovery in their tribunals.

Distilled to its most basic essence, in this assignment of error the insurers basically request that we find that, because they already are subject to insurance regulations that regulate the dissemination of confidential information, insurance companies should not also be subjected to medical protective orders that similarly limit the manner in which they may use the information protected thereby. This proposition is problematic for two reasons: (1) it enlarges the authority of an administrative agency beyond the scope of its legislative delegation of power by sub-

---

16. *See, e.g.,* W. Va.C.S.R. § 114–57–15.1 (2002) ("A licensee shall not disclose nonpublic personal health information about a consumer or customer unless an authorization is obtained from the consumer or customer whose nonpublic personal health information is sought to be disclosed."); W. Va.C.S.R. § 114–62–3.1 (2003) ("Each licensee shall implement a comprehen-

sive written information security program that includes administrative, technical and physical safeguards for the protection of customer information. The administrative, technical and physical safeguards included in the information security program shall be appropriate to the size and complexity of the licensee and the nature and scope of its activities.").

stituting the Insurance Commissioner's regulations for the rulings of the circuit court issuing the protective order and (2) it usurps the exclusive province of the court to regulate discovery in matters over which it presides.

**1. Authority of administrative agency is limited by enabling legislation.** An administrative body is vested with only that power specifically granted to it by the Legislature. In other words, "[a]n administrative agency is but a creature of statute, and has no greater authority than [that] conferred under the governing statutes." *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 16, 483 S.E.2d 12, 16 (1996) (citations omitted). *Accord* Syl. pt. 3, *Appalachian Reg'l Health Care, Inc. v. West Virginia Human Rights Comm'n,* 180 W.Va. 303, 376 S.E.2d 317 (1988) (" 'Administrative agencies and their executive officers are creatures of statute and delegates of the Legislature. Their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. They have no general or common-law powers but only such as have been conferred upon them by law expressly or by implication.' Syl. pt. 3, *Mountaineer Disposal Service, Inc. v. Dyer,* 156 W.Va. 766, 197 S.E.2d 111 (1973).").

As a general rule the Legislature, in delegating discretionary power to an administrative agency, such as a board or a commission, must prescribe adequate standards expressed in the statute or inherent in its subject matter and such standards must be sufficient to guide such agency in the exercise of the power conferred upon it.

Syl. pt. 3, *Quesenberry v. Estep,* 142 W.Va. 426, 95 S.E.2d 832 (1956).

By the same token, "[i]n order for a delegation of authority by the legislature to be constitutional, the legislature must prescribe adequate statutory standards to guide the agency in the administration of the statute, and *not grant the agency unbridled authority in the exercise of the power conferred upon it. . . ."* Syl. pt. 2, in part, *State ex rel. Mountaineer Park, Inc. v. Polan,* 190 W.Va. 276, 438 S.E.2d 308 (1993) (emphasis added). "[T]he legislature may *not* vest an administrative agency with uncontrolled discretion." *Id.,* 190 W.Va. at 280, 438 S.E.2d at 312 (emphasis added; footnote omitted). *But cf.* Syl. pt. 5, *State ex rel. West Virginia Hous. Dev. Fund v. Copenhaver,* 153 W.Va. 636, 171 S.E.2d 545 (1969) (" 'The delegation by the legislature of broad discretionary powers to an administrative body, accompanied by fitting standards for their exercise, is not of itself unconstitutional.' Point 8 Syllabus, *Chapman v. Huntington, West Virginia, Housing Authority,* 121 W.Va. 319 [3 S.E.2d 502 (1939) ]."). Accordingly, an administrative agency's exercise of power beyond that with which it is imbued is invalid: "an administrative agency can only exercise such powers as those granted by the legislature, and if such agency exceeds its statutory authority, its action may be nullified by this Court." *Mountaineer Park,* 190 W.Va. at 280, 438 S.E.2d at 312 (citation omitted).

We agree with the insurers' representation that the Insurance Commissioner has promulgated regulations that define the manner in which an insurance company may use confidential information.[17] We also agree that these provisions provide significant protection to persons, such as the plaintiffs herein, about whom the confidential information has been sought and obtained. We disagree, however, that regulations adopted by the Insurance Commissioner, or any other administrative agency for that matter, may replace or serve as a substitute for a court-issued order regulating the manner in which discovery is to be conducted. An agency's intrusion, however slight and seemingly innocuous, into processes that are regarded as exclusively judicial in nature exceeds the scope of that agency's legislative grant of authority and violates the separation of powers doctrine.[18] Simply stated,

---

17. *See supra* note 16.

18. The separation of powers doctrine is set forth in section 1 of Article V of the West Virginia Constitution:

The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any

"[w]here there is a direct and fundamental encroachment by one branch of government into the traditional powers of another branch of government, this violates the separation of powers doctrine contained in Section 1 of Article V of the West Virginia Constitution." Syl. pt. 2, *Appalachian Power Co. v. Public Serv. Comm'n of West Virginia*, 170 W.Va. 757, 296 S.E.2d 887 (1982). While we can abide by the Insurance Commissioner's enforcement of its privacy regulations, we simply cannot condone a construction of such rules that would permit an agency's standards to serve as a substitute for a valid protective order issued by a court of this State with the exclusive authority to do so.

■■■■■■ 2. **Circuit courts are vested with broad discretion to manage discovery.** As part of the discovery process in the cases *sub judice*, the circuit court issued the subject medical protective orders. We long have held that matters relating to the conduct of discovery rest within the sound discretion of the court presiding over such proceedings.

The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. pt. 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995). For this reason, we defer to circuit court's rulings on discovery rulings in all but the most egregious of cases.

A trial court is permitted broad discretion in the control and management of discovery, and it is only for an abuse of discretion amounting to an injustice that we will interfere with the exercise of that discretion. A trial court abuses its discretion when its rulings on discovery motions are clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock our sense of justice and to indicate a lack of careful consideration.

Syl. pt. 1, *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 475 S.E.2d 555 (1996). *See also* Syl. pt. 2, *id.* ("Trial courts have the inherent power to manage their judicial affairs that arise during proceedings in their courts, which includes the right to manage their trial docket."). In view of these authorities, we now hold that, as part of a court's exclusive authority to manage discovery in its tribunal, a court also may enter protective orders to safeguard the confidentiality of materials disclosed in discovery and to regulate the manner in which such information may be used.[19]

person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature.

**19.** A circuit court's authority to issue a protective order is part of its general power to manage discovery in proceedings over which it presides:

Upon motion by a party or by the person from whom discovery is sought, including a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, *the court in which the action is pending* or alternatively, on matters relating to a deposition, the court in the circuit where the deposition is to be taken *may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense*, including one or more of the following:

(1) That the discovery not be had;

(2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) That certain matters not be inquired into or that the scope of the discovery be limited to certain matters;

(5) That discovery be conducted with no one present except persons designated by the court;

(6) That a deposition after being sealed be opened only by order of the court;

(7) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;

(8) That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be open as directed by the court.

Insofar as the authority to manage discovery rests with the judicial branch, as implemented by the courts hearing cases in which discovery issues are presented, the authority to limit an insurer's dissemination of confidential medical information obtained through discovery is governed by the presiding court, through a protective order or otherwise, and not by an administrative regulation applicable to insurance companies.[20] Therefore, we reject the insurers' contention that the privacy regulations with which they must comply serves to exempt them from complying with the subject medical protective orders entered by the circuit court in the underlying proceedings.

### E. Definition of "Medical Record"

As a final matter, Nationwide requests this Court to adopt definitive definitions of "medical records" and "medical information" to provide clarity to the circuit court's medical protective order. In view of the broad discretion afforded to circuit courts to regulate discovery in proceedings over which they preside,[21] we are hesitant to accept Nationwide's invitation to define these terms.

In *Bedell II*, we addressed the meaning of "medical records" and "medical information" only to the extent necessary to ascertain whether the circuit court had intended to use the two terms interchangeably. *See Bedell II*, 228 W.Va. at 265–71, 719 S.E.2d at 735–41. We stopped short, however, of ascribing a definite meaning to such terms insofar as it was not our prerogative to do so. *Id.*, 228 W.Va. at 269, 719 S.E.2d at 739 ("[W]e cannot supply language that the circuit court did not include [in the protective order] in the first instance." (citation omitted)). Here, we

also find that it is not our place to substitute our construction of the subject terms for that of the circuit court. Rather, given the circuit court's broad latitude in managing discovery in its proceedings,[22] including issuing a protective order and dictating the scope thereof in the first instance,[23] we find such a request for clarification to be more appropriately addressed by the tribunal issuing the protective order, itself. In short, it is for the circuit court issuing the protective order, and not this Court, to define the order's scope, breadth, and intended meaning of the terms employed therein. Accordingly, we deny Nationwide's request to construe these terms in the circuit court's stead.

### IV.

### CONCLUSION

For the foregoing reasons, in Case Number 12–0304, the requested writ of prohibition is hereby denied. Furthermore, in Case Number 12–0210, the January 13, 2012, order of the Circuit Court of Harrison County is hereby affirmed.

Case Number 12–0304—Writ Denied.

Case Number 12–0210—Affirmed.

Chief Justice KETCHUM dissents and reserves the right to file a dissenting opinion.

Justice BENJAMIN concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

BENJAMIN, J., concurring, in part, and dissenting, in part:

I write separately to reiterate my dissent in *State ex rel. State Farm Mutual Automo-*

---

If the motion for a protective order is denied in whole or in part, the court may, on terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion. W.Va. R. Civ. P. 26(c) (emphasis added).

**20.** In rendering this ruling, we make no finding as to the validity of the Insurance Commissioner's regulations referenced herein nor do we find it improper for the Commissioner to require insurance companies to comply with such rules. We merely wish to clarify that, as between the Insurance Commissioner and the circuit court, the circuit court is the tribunal authorized to

regulate matters pertaining to the discovery and dissemination of confidential medical records in proceedings over which the court presides.

**21.** *See* Syl. pt. 1, *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 475 S.E.2d 555 (1996); Syl. pt. 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

**22.** *See* Syl. pt. 1, *B.F. Specialty Co.*, 197 W.Va. 463, 475 S.E.2d 555; Syl. pt. 1, *McDougal*, 193 W.Va. 229, 455 S.E.2d 788.

**23.** *See* W. Va. R. Civ. P. 26(c).

**532**

*bile Insurance Company v. Bedell*, 228 W.Va. 252, 719 S.E.2d 722 (2011) (*"Bedell II "*). As with the protective order at issue in *Bedell II*, I believe that the protective orders in the case *sub judice* impermissibly frustrate the Insurance Commissioner's prerogative and ability to investigate instances of fraud pursuant to the Insurance Fraud Prevention Act, and the protective orders put the insurance companies in an untenable position with respect to meeting their regulatory obligations.

KETCHUM, Chief Justice, dissenting:

I stand by my dissent in our previous medical protective order case, *State ex rel. State Farm Mutual Automobile Insurance Company v. Bedell*, 228 W.Va. 252, 719 S.E.2d 722 (2011) (*"Bedell II "*). In the dissent, I stated that a plaintiff has no confidentiality or privacy interest in his or her medical records "when those records are lawfully distributed to an adverse party in a personal injury lawsuit." 228 W.Va. at 274, 719 S.E.2d at 744.

However, even if I agreed with the majority, I would point out that their case-by-case medical protective order approach to protect medical records is inadequate. Requiring a plaintiff's lawyer to go to court to obtain a medical protective order in every case is time consuming and expensive to all parties. Injured plaintiffs and insurance companies want their cases resolved quickly and inexpensively. They do not want pre-trial motions delaying the resolution of the claim. More importantly, trial courts are too busy to continually hear motions for protective orders.

To avoid the expensive, time-consuming delays caused by case-by-case hearings on medial protective orders, this Court should adopt a medical privacy rule addressing the matter. A rule (such as the following rule adopted in South Dakota) that would eliminate the majority's case-by-case approach would state:

### Medical Privacy

The production of a record of a health care provider, whether in litigation or in contemplation of litigation, does not waive any privilege which exists with respect to the record, other than for the use in which it is produced. Any person or entity receiving such a record may not reproduce, distribute, or use it for any purpose other than for which it is produced.

This rule does not bar any person or entity from complying with any court order, or state or federal law or regulation authorizing disclosure of information that otherwise would be protected by this rule.

In adopting this rule, the South Dakota Supreme Court became the first court in the country to promulgate a directive restricting the dissemination of medical records produced in litigation or in contemplation of litigation. *See*, James D. Leach, *Medical Privacy: The South Dakota Supreme Court Adopts SDCL 19–2–13*, 57 S.D. L.Rev. 1 (2012) ("[T]he burden of pursuing protective orders on a case-by-case basis—often over the strenuous opposition of defendants and their insurers—will usually outweigh the perceived benefit.").

Accordingly, I would vote in favor of adopting such a rule in West Virginia.

Therefore, I respectfully dissent.