## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **L.H.-1, B.H., L.H.-2, E.H. and T.H.**

**No. 24-301** (Clay County CC-08-2023-JA-11, CC-08-2023-JA-12, CC-08-2023-JA-13, CC-08-2023-JA-14, and CC-08-2023-JA-15)

## MEMORANDUM DECISION

Petitioner Father A.H.[1] appeals the Circuit Court of Clay County's April 24, 2024, order terminating his parental rights to L.H.-1, B.H., L.H.-2, E.H. and T.H., arguing that the circuit court deprived him of his meaningful right to be heard by denying his various motions and invoking the rape shield law.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In May 2023, the DHS filed a petition alleging that the petitioner abused and neglected his stepchildren, E.H. and T.H., by repeatedly sexually abusing them over the course of many years. The DHS also alleged that the petitioner failed to provide all of the children appropriate housing, free from the threat of sexual abuse, and engaged in domestic violence in the home.

On May 15, 2023, the court held a preliminary hearing at which the Child Protective Services ("CPS") worker who investigated the allegations testified as to her conversations with the children. The witness stated that both fifteen-year-old E.H. and sixteen-year-old T.H. disclosed that the petitioner would come into their bedroom at night and touch them inappropriately both over and under their clothing.

---

[1] The petitioner appears by counsel Ronald N. Walters Jr. The West Virginia Department of Human Services appears by Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Andrew C. Shaffer appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, two of the children share the same initials, so we use numbers to differentiate between them.

1

On August 24, 2023, the petitioner filed two motions. The petitioner first moved to compel a Child Advocacy Center ("CAC") interview of the children's minor cousin D.S., recordings of the second CAC interviews of E.H. and T.H., medical records for D.S., and any other exhibits the DHS intended to use at upcoming hearings. In the petitioner's second motion, he requested that the court compel a second CAC interview of D.S. In support, the petitioner claimed that he had learned that D.S. informed her mother that she, E.H., and T.H. fabricated the allegations against him so that E.H. and T.H. could pursue romantic relationships that the petitioner had disallowed. By order dated August 25, 2023, the court denied the petitioner's motion for a second CAC interview of D.S., explaining that a second interview was not in the child's best interest and that the petitioner was free to present other forms of evidence regarding that child's credibility. Then, on October 16, 2023, the petitioner filed two more motions. In the first motion, he requested discovery of E.H. and T.H.'s diaries and the results of a forensic evaluation on T.H.'s cell phone. In the second motion, he moved to continue the October 17, 2023, adjudicatory hearing so that he could obtain the requested evidence, which he believed contained exculpatory information.

On October 17, 2023, the parties convened for an adjudicatory hearing. The court first addressed the petitioner's motions and, based upon the DHS's representation that no forensic evaluation was performed on T.H.'s cell phone, denied the petitioner's motion for discovery of the same. The court similarly denied the request to obtain E.H. and T.H.'s diaries after the DHS informed the court that it was unaware of the existence of those diaries. Accordingly, the court also denied the petitioner's motion to continue.

Next, the petitioner moved to compel the children to testify. The court denied the motion, explaining that Rule 8 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings establishes a rebuttable presumption that the potential psychological harm to the children outweighed the necessity of their testimony and that their CAC interviews were admissible evidence. Then, the forensic interviewer who conducted the children's CAC interviews testified that she interviewed both E.H. and T.H. twice—once in May 2023 and once in August 2023. Video recordings of T.H.'s May 2023 interview, E.H.'s May 2023 interview, and E.H.'s August 2023 interview were played in the courtroom and the interviewer testified that each video was an unaltered, accurate account of the interviews she performed. Over the petitioner's objection, the three recorded interviews were entered into evidence. The children's mother testified that she obtained a domestic violence protective order for E.H. and T.H. on the day she became aware of the allegations against the petitioner. Next, the petitioner's counsel questioned E.H. and T.H.'s grandmother about their recent behaviors, as the two children had been living with her for around five months. As the grandmother began to discuss the children's recent behaviors, the DHS objected and the court stopped the witness, explaining that the children's behaviors after the petition was filed were irrelevant to adjudication and determined that evidence of E.H. and T.H.'s sexual conduct with other individuals was also irrelevant under the West Virginia Rules of Evidence and the West Virginia Rape Shield Statute. *See* W. Va. R. Evidence, 412; W. Va. Code § 61-8B-11. The petitioner called T.H.'s boyfriend to the stand and he testified to witnessing the petitioner exit E.H.'s room in the middle of the night. Then, the petitioner testified and denied all of the allegations against him, generally alleging that the children "plott[ed] to . . . get rid of [him]."

At the conclusion of the hearing, the circuit court noted that there was no evidence to support the petitioner's assertion that E.H. and T.H. fabricated the allegations nor was there any evidence that E.H. and T.H. told any third parties that the allegations were false, as the petitioner represented. The court explained that it observed and relied upon the body language and demeanor of E.H. and T.H. in their interviews and that of the petitioner during his testimony. In the resulting adjudicatory order, the court found that E.H. and T.H. were truthful during their CAC interviews and that T.H.'s boyfriend confirmed that the petitioner was in E.H.'s bedroom in the middle of the night. As such, the court adjudicated the petitioner of sexually abusing E.H. and T.H. and concluded that this abuse resulted in all the children being abused children.

As the petitioner challenges only his adjudication, it is sufficient to note that in December 2023, the court held a dispositional hearing at which it found that there was no reasonable likelihood that the conditions of abuse could be corrected in the near future and the children's best interest necessitated termination of the petitioner's parental rights. Ultimately, the court terminated his parental rights to the five children. It is from the dispositional order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T*., 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner challenges his adjudication as an abusing parent, arguing "through the operation and decisions of the lower court, [he] was denied a meaningful and full hearing . . . and his right to due process." Indeed, the petitioner was entitled to a meaningful opportunity to be heard, which includes the opportunity to present and cross-examine witnesses. *See* W. Va. Code § 49-4-601(h) ("In any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses."). At the outset, we note that the petitioner took this opportunity by presenting five witnesses and cross-examining the DHS's witnesses at the adjudicatory hearing. Despite this, the petitioner contends that certain decisions of the circuit court resulted in him being denied a meaningful opportunity to be heard.

**Denial of the Petitioner's Motion to Compel the Testimony of T.H., E.H., and D.S. or, Alternatively, Permit In-Camera Examination of T.H., E.H., and D.S.**

The petitioner complains that the circuit court erred by denying his motion to compel the children to testify at the adjudicatory hearing. The petitioner asserts that he was denied the opportunity to confront the children and his right to cross-examine the children after their testimony was presented through their CAC interviews. Inasmuch as the petitioner argues that examination of the children—either through live testimony or in-camera interviews—was appropriate, we disagree. Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings establishes "a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony" and directs that "the court shall exclude this testimony if the potential psychological harm to the child outweighs the necessity of

---

[3] The children's permanency plan is to remain in the nonabusing mother's care. T.H. has reached the age of majority.

the child's testimony." The petitioner contends that he was denied the opportunity to rebut the presumption because the court disallowed him from questioning the children either on the stand or in-camera. Essentially, the petitioner argues that, in order to rebut the presumption, he required the children's testimony—the very testimony to which the presumption applied. Despite the petitioner's assertion that he was denied "his right to present evidence through the testimony of witnesses," the record shows that he called several witnesses during the adjudicatory hearing. The petitioner also baldly asserts that the presumption was rebutted by the children's "age[s] and maturity" while providing no authority for this assertion. The petitioner concludes this portion of his argument by stating that "any potential psychological harm to T.H. and E.H. does not outweigh Petitioner's procedural due process right to confront and cross-examine them." However, we have explained that "a party does not have a procedural due process right to confront and cross-examine a child." Syl. Pt. 7, in part, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014).[4] The petitioner exercised his right to present and cross-examine witnesses, and the circuit court exercised its legitimate authority in determining that the petitioner failed to rebut the presumption. Accordingly, the petitioner is entitled to no relief.

### Denial of the Petitioner's Motions for Discovery

Next, the petitioner challenges the circuit court's denials of his motions for discovery. Regarding a lower court's authority to make discovery decisions, we have held that

> "[a] trial court is permitted broad discretion in the control and management of discovery, and it is only for an abuse of discretion amounting to an injustice that we will interfere with the exercise of that discretion. A trial court abuses its discretion when its rulings on discovery motions are clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock our sense of justice and to indicate a lack of careful consideration." Syllabus point 1, *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 475 S.E.2d 555 (1996).

Syl. Pt. 7 *State ex rel. State Farm Mut. Auto Ins. Co. v. Marks*, 230 W. Va. 517, 741 S.E.2d 75 (2012). The petitioner argues that the circuit court's denial of his motion to obtain a second CAC interview of D.S., a nonparty child, deprived him of "considerable evidence which would have called into question the veracity of the allegations" due to "evidence that D.S. had recanted a previous allegation against the petitioner." However, the petitioner does not challenge the court's

---

[4] In support of this argument, the petitioner cites to a case where this Court held that "the requirement of cross-examination is fully met when counsel for the parent or guardian is present during the testimony of a child witness and is given the opportunity to fully cross-examine the witness." Syl. Pt. 3, in part, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997). However, in that case, the parent was excluded from an in-camera interview of the child pursuant to Rule 8(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. In the case at hand, the circuit court had already decided against forcing the children to testify pursuant to Rule 8(a) of the Rules of Procedure for Child Abuse and Neglect Proceedings. Thus, the petitioner's reliance on Rule 8(b) is misplaced, as is his reliance on the case to which he cites.

finding that a second interview was contrary to D.S.'s best interests, fails to explain how D.S.'s experiences were relevant as to whether or not the petitioner abused T.H. and E.H., and makes no argument as to D.S.'s first CAC interview, which was not admitted into evidence. Ultimately, the circuit court denied the motion and noted that the petitioner was free to present other evidence as to D.S.'s credibility but he did not. Accordingly, we perceive no abuse of discretion in the denial of his motion.

The petitioner also argues that the circuit court erroneously denied his motion for discovery requesting E.H. and T.H.'s diaries and a forensic evaluation of T.H.'s cell phone.[5] The petitioner failed to advance any evidence that those diaries existed other than the petitioner's counsel proffering that the children's grandmother "mentioned" the diaries during a phone call. The DHS represented that it had no diaries in its possession and did not intend to admit any diaries into evidence. The petitioner also complains he was disallowed discovery of a forensic evaluation conducted on T.H.'s cell phone, which may have contained inappropriate pictures of either T.H. or E.H. Again, the petitioner failed to establish that an evaluation of that cell phone occurred and failed to offer supportive evidence that there was relevant data on the cell phone.[6] The circuit court's discovery rulings were in line with the "logic of the circumstances," as the evidence the petitioner requested did not exist, its decision was not "arbitrary and unreasonable as to shock our sense of justice and to indicate a lack of careful consideration," and the petitioner is entitled to no relief. *Id.*

### The Circuit Court's Evidentiary Determinations

The petitioner's remaining arguments challenge the circuit court's determinations regarding certain evidence and lines of questioning. At the outset, we note that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 1, *State v. Timothy C.*, 237 W. Va. 435, 787 S.E.2d 888 (2016) (quoting Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998)).

The petitioner complains that the court erroneously sustained the DHS's objection to his counsel's lines of questioning regarding the CAC interviewer's interviewing techniques, training, and experience. It is critical to note, however, that the circuit court sustained the petitioner's objection to the CAC interviewer being qualified as an expert witness; thus, the court determined

---

[5] The petitioner further complains that the circuit court erred by denying his related motion to continue. However, we have explained that "[a] motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion." Syl. Pt. 3, in part, *In re Mark M.*, 201 W. Va. 265, 496 S.E.2d 215 (1997) (quoting Syl. Pt. 2, *State v. Bush*, 163 W. Va. 168, 255 S.E.2d 539 (1979)). The petitioner's motion to continue was expressly for the purpose of obtaining additional discovery which the circuit court had already denied. Thus, the circuit court acted within its discretion in denying the motion to continue.

[6] The parties do not dispute that there was a cell phone that was in the custody of law enforcement for purposes of a related criminal case.

that the petitioner's inquiries were irrelevant. Further, the petitioner was disallowed from asking certain questions about specific statements in the CAC interviews because the interviews would speak for themselves. However, he was permitted to inquire about why the interviewer *did not* ask certain questions. The petitioner similarly complains that his counsel was disallowed from questioning the children's grandmother about their recent behaviors. The court acted within its legitimate discretion when it found that evidence of the children's actions after the petition was filed was irrelevant to the question of whether the alleged abuse occurred and disallowed those lines of questioning. As such, the court did not abuse its discretion in making its evidentiary rulings and the petitioner is entitled to no relief in this regard.

Finally, the petitioner argues that the circuit court erroneously invoked West Virginia Code § 61-8B-11, commonly referred to as the West Virginia Rape Shield Law, thereby disallowing the petitioner's counsel from asking questions calculated to reveal "the scheme concocted by T.H., E.H., D.S., and [T.H.'s boyfriend, J.S.] to falsely accuse Petitioner of sexual assault and/or abuse." However, the court merely referenced the West Virginia Rape Shield Law and ultimately, sustained the DHS's objections to the petitioner's inquiries about the children's sexual behaviors with others because that information was irrelevant. Accordingly, we perceive no abuse of discretion in the court's evidentiary determination in this regard.

### The Circuit Court's Credibility Determinations

While the petitioner assigns error to the circuit court's administration of the proceedings, denials of certain motions, and evidentiary determinations, the petitioner's arguments hinge upon his accusation that E.H. and T.H. were lying in furtherance of their conspiracy to "get rid of [him]." It is clear that the petitioner's true aim is for this Court to agree with his theory that E.H. and T.H.'s CAC interviews were not credible and permit him to relitigate adjudication, as he is dissatisfied with the circuit court's credibility determinations and weighing of the evidence. We decline to do so, as we will not substitute our own judgement in place of the circuit court's. *See In re D.S.*, 251 W. Va. 466, --, 914 S.E.2d 701, 707 (2025) (In abuse and neglect cases, "[w]e . . . do not reweigh the evidence or make credibility determinations."). As such, the petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 24, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: September 30, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison